Baxter, J.
The defendant is a common carrier by rail. Its road, though owned by a corporation, was nevertheless constructed for public uses, and is, in a qualified sense, a public highway.. Hence everybody constituting a part of the public, for whose benefit it was authorized, is entitled to an equal and impartial participation in the use of the facilities it is capable of affording. Its ownership by the corporation is in trust as well for the public as for the shareholders; but its first and primary obligation is to the public. We need not recount all these obligations.' It is enough for present purposes to say that the defendant has no *90 right to make unreasonable and unjust discrimination. The case of Nicholson v. R. R. Co., 5. C. B. N. S., 366, is in its facts more nearly like the case under consideration than any other case that we have been able to find. This was an application under the Railway and Traffic Act for an injunction to restrain the railway company from giving lower rates to the Ruabon Coal Company than were given to the complainant in that case in the shipment of coal, in which it appeared that there was a contract between the railroad company and the Ruabon Coal Company, whereby the coal company undertook to ship, for a period of ten years, as much coal for a distance of at least one hundred miles over defendant’s road as would produce an annual, gross revenue of £40,000 to the railroad company, in fully loaded trains, at the rate of seven trains per week. In passing on these facts the Court said that, in considering the question of undue preference, the fair interest of the railroad company ought to be taken into the account; that the preference or prejudice referred to by the statute must be undue or unreasonable to be within the prohibition; and that, although it was manifest that the coal company had many and important advantages in carrying their coal on the railroad as against the complainant and other coal owners, still, the question remained, Were they undue or unreasonable advantages? And this, the Court said, mainly depended on* the adequacy of the consideration given by the coal company to the railroad company for the advantages afforded by the latter to the coal company, and because it appeared that the cost of carrying coal in fully loaded trains regularly furnished, at the rate of seven trains per week, was less per ton to the railroad company than coal delivered in the usual way and at irregular intervals, and in unequal quantities. In connection with the coal company’s undertaking to ship annually coal enough over defendant’s road, for at least a distance of one hundred miles, to produce a gross revenue to the railroad company of £40,000, the Court held that the discrimination complained of in the case was neither undue nor unreasonable, and therefore denied the application.
This case seems to have been well considered, and we have no disposition to question its authority. Future experience *91 may possibly call for some modification of the principles therein announced, but this case calls for no such modification, inasmuch as the facts of that case are very different, when closely analyzed, from the facts proven in this one. In the former, the company in whose favor the discrimination was made, gave, in the judgment of the Court, an adequate consideration for the advantages conceded to it, under and in virtue of its contract. It undertook to guaranty £40,000 worth of tonnage per year, for ten years, to the railroad company, and to tender the same for shipment in fully loaded trains, at the rate of seven trains per week. It was in consideration oí these obligations, which, in the judgment of the Court, enabled the railroad company to perform the services at less expense, the Court held that the advantages secured by the contract to the coal company were neither undue nor unreasonable. But there are no such facts to be found in this case. There was in this case no undertaking by any one to furnish a specific quantity of freight at stated periods, nor was any one bound to tender coal for shipment in fully loaded trains. In these particulars plaintiffs occupied common ground with the parties who obtained lower rates. Each tendered coal for shipment in the same condition, and at such times, as suited his or their convenience: The discrimination sued on rested exclusively on the amount of freight supplied by the respective shippers during the year. Ought a discrimination, resting exclusively on such basis, to be sustained? If so, then the business of the country is, in some degree, subject to the will of railroad officials; for if one man engaged in mining coal, and dependent upon the railroad for transportation to the same market, can obtain transportation thereof at from twenty-five to fifty cents per ton less than another competing with him in business, solely on the ground that he is able to furnish, and does furnish, the larger quantity for shipment, the smaller operator will sooner or later be forced to abandon the unequal contest and surrender to his more opulent rival. If the principle is sound in its application to rival parties engaged in mining coal, it is equally as applicable to merchants, manufacturers, millers, dealers in lumber and grain, and to everybody else interested in any business requiring any considerable amount of trans *92 portation by rail; and it follows that the success of all such enterprises would depend as much on the favor of railroad officials as upon the energies and capacities of the parties prosecuting the same. It is not difficult, with such ruling, to forecast the consequences. The men who control the railroads would be quick to appreciate the power with which such holding would invest them, and, it may be, not slow to make the most of their opportunities, and perhaps favor their friends to the detriment of their personal or political opponents; or demand a division of the profits realized from such collateral pursuit as could be favored or depressed by discrimination for or against them; or else, seeing the augmented power of capital, organize into overshadowing combinations and extinguish all petty competition, monopolize business, and dictate the price of coal and every other commodity to consumers. We say these results might follow the exercise of such a right as is claimed for railroads in this case. But we think no such power exists in them; they have been organized for the common benefit of every one, and cannot be lawfully manipulated for the advantage of any class at the expense of any other. Capital needs no such extraneous aid. It possesses inherent advantages which cannot be taken from it. But it has no claim, by reason of its accumulated strength, to demand the use of the public highways of the country, constructed for the common benefit of all, on more favorable terms than are accorded to the humblest of the land; and a discrimination in favor of parties furnishing the largest quantit}^ of freight, and solely on that ground, is a discrimination in favor of capital, and is contrary to a sound public policy, violative of that equality of right guaranteed to every citizen, and a wrong to the disfavored party, for which the Courts are competent to give redress.

Judgment affirmed.