CASE 44—ACTION BY JOHN OMAN AND OTHERS AGAINST THE BEDFORD-
BOWLING GREEN STONE COMPANY AND. L. & N. R. R. CO. FOR THE
USE OF A SWITCH FROM SAID RAILROAD TO THE STONE QUARRY.—
APRIL 28.

# Bedford-Bowling Green Stone Co. &c. v. Oman, &c.

### APPEAL FROM WARREN CIRCUIT COURT.

JUDGMENT FOR PLAINTIFFS AND BOTH DEFENDANTS APPEAL. AFFIRMED
ON APPEAL OF RAILROAD CO. AND REVERSED ON APPEAL OF STONE
COMPANY.

LEASE—CONSTRUCTION—EXPIRATION—RIGHT TO QUARRY STONE—USE
OF SURFACE—TITLE TO SWITCH—RAILROAD—DUTY TO RECEIVE
FREIGHT.

Held:   1. A lease of the right to work and use all the fine cutting
stone contained on two certain tracts of land obligated the
lessees to build or cause to be built a railroad from the quarry
over the land of a third party to the line of a certain rail-
road company. There was no covenant in the lease for the convey-
ance of the railroad to the lessors at its expiration. HELD that,
in the absence of a stipulation governing the matter, the rail-
road, being part of the realty, became the property of the
owners of the soil to which it was affixed, and a grantee of one
of the lessors had no interest therein.

2. A commissioner's deed, stipulating that "that which is conveyed
is in the interest of F. in the cutting stone on the land afore-
said, being one-third interest," conveys only an interest in the
cutting stone, and no interest in a railroad switch connecting
the quarry with the line of a railroad company.

3. A railroad corporation which had the control and management
of a switch running from its line to appellant's quarry could
not lawfully refuse to receive and transport freight belonging
to appellees, owners of a nearby quarry, to and from such
reasonable points along the line at which they could lawfully
ship or receive it.

4. The right to take cutting stone from a tract of land necessarily
carries with it such reasonable use of the surface over the
stone as is necessary to make the right available.

BODLEY, BASKIN & MORANCY AND JOHN E. DuBOSE, FOR AP-
PELLANT, BEDFORD-BOWLING GREEN STONE CO.

JAS. E. MITCHELL, MITCHELL & DuBOSE, E. W. HINES, B.
D. WARFIELD AND THOS. B. HARRISON, JR., FOR APPELLANT,
L. & N. R. R. CO.

LEWIS McQUOWN, FOR APPELLEES.

JOHN E. DuBOSE AND BODLEY, BASKIN & MORANCY, FOR AP-
PELLANT, BEDFORD-BOWLING GREEN STONE CO.

CLASSIFICATION OF QUESTIONS DISCUSSED.

1. A railroad built upon lands of a lessor by a lessee under
requirements of the lease become part of the realty and become
the absolute property of the lessor (owner of the fee) at the
end of the term in the absence of a reservation to the contrary
in the lease. White Stone Quarry Co. v. Belknap, 16
S. W., 355; 13 L. R., 244.

2. An easement over one tract in favor of another tract, or
the owner of another tract, can not be granted unless the
grantor of the easement owns the land over which the ease-
ment is attempted to be granted. Spencer's Case, Smith's Lead-
ing Cases, star pp. 156-8.

3. An easement, like any other interest in land, can only be cre-
ated by grant evincing a clear manifestation of an intention to
grant the easement. E. & A. Ency. Law, vol. 6, p. 141; "It can
not be established by intendment or presumption;" Colson v.
Ingram, 22 S. C., 541.

4. Where the lease required the lessee to build *or cause* a rail-
road to be built, he was authorized to rent the rails and ties, and
the title to the rails and ties do not pass from the owner who
let them under a stipulation that his title herein shall be re-
served.

5. Where Smith, owning the fee in one tract, and Sanders own-
ing one-third of the cutting stone in an adjoining tract, execute
a thirty years' lease in consideration of a fixed royalty to be
paid, and in further consideration of the agreement to build a
road from Memphis Junction to the quarry upon the fee of
Smith, such a lease could not be deemed a grant of any part
of the remainder or reversion in the railroad to Sanders with-
out clear words to indicate such a grant. Washburn on Realty,
sec. 1233.

6. Even, if under such a lease, an interest in the railroad on
the lands of others was granted to Sanders, he never sold it
to Oman, and the judgment establishing Oman's right therein
is therefore erroneous. Oman's purchase of part of the cutting

stone in another tract could not include an interest in the railroad on Smith's land.

7. Loving owned the fee in the land in which Sanders owned a third of the cutting stone. Loving was not a party to the lease. Hence, no interest in the railroad over his fee was granted.

8. Tracks built after the lease was executed and after it expired and not in pursuance thereof could not be granted by the lease.

9. The judgment grants an interest in fee in the railroad when only a right of way was sued for.

10. The judgment is erroneous because it enjoins appellants from interfering with Oman's use of the road as *now constructed*, when the same judgment establishes her interest only in the road *as constructed under the lease*.

11. Smith, the grantor of appellant, and Sanders, the grantor of Oman, made no contract concerning the railroad. Though joint lessors to Owen-McDonald & Co., they leased different tracts, and Smith granted nothing to Sanders. Therefore Sanders' grantee did not acquire an interest in or right of way over the railroad, whether constructed under the lease or otherwise over Smith's land.

JAMES A. MITCHELL, EDWARD W. HINES, B. D. WARFIELD AND THOMAS B. HARRISON, FOR APPELLANT, L. & N. R. R. CO.

### POINTS AND CITATIONS.

1. When there is a right to refuse to perform services, a common carrier may contract for their performance in a different capacity from that which rests upon it as a common carrier, and when thus rendering service it is not a common carrier. Elliott on Railroads, sec. 1396; Hutchinson on Carriers, secs. 47-56, and 67.

2. A lease by a railroad company to a quarry company of rails and ties, and hauling cars to and from the quarry by direction of the quarry company, does not make the railroad company a common carrier over the switch connecting the quarry with the line of the railroad.

3. The judgment appealed from requires the railroad company to become a trespasser.

4. Courts will not enforce by injunction a contract or right which may be revoked at any time so that the judgment will be idle and nugatory. Jones v. N. N. & M. V. R. R. Co., 65 Fed. Rep., 737; Chattanooga v. C. N. O. & T. P. Co., 44 Fed.

Rep., 456; Baldwin v. Kansas City R. R. Co., 111 Ala., 515; Irish v. Deen, 39 Wis., 562; Fry on Specific Performance, p. 64, sec. 43; Andrews v. Andrews, 28 Ala., 432.

MITCHELL & DuBOSE AND EDWARD W. HINES, FOR APPELLANT, L. & N. R. R. Co.

### POINTS AND CITATIONS.

1. In requiring the lessees to cause a railroad to be built the lessors did not intend to require them to construct a road to remain permanently on the land, and therefore the lessees had a right to merely rent the materials from the railroad company and to give it the right to remove them.

2. A railroad track constructed by a tenant is a trade fixture which may be removed by him upon the expiration of the term. Thomas v. Crout, 5 Bush, 40.

3. The railroad company having the right to remove the materials upon the expiration of the lease, had the right to enter into any contract it might choose with the owner of the land for their future use, and the owner of the land having acquired its right to the use of the track by virtue of such a contract, the defendants can not claim any interest therein under the terms of the lease.

4. Even if the lease could be construed as stipulating that Sanders should have a right of way over the land of the Smiths after the expiration of the lease, this was not a covenant running with the land, and certainly did not enure to the benefit of the vendees of the covenantee in the absence of any reference thereto in the deed to them. 2 Washburn on Real Property, (5 ed.), p. 297; Combs v. Stewart, &c., 10 B. M., 463.

LEWIS McQUOWN, ATTORNEY FOR APPELLEE, OMAN.

### POINTS AND AUTHORITIES.

1. The Louisville & Nashville Railroad Company is bound as a common carrier, to receive and transport freight over a road which it operates from its line to a stone quarry.

2. Such a road is a public way and serves a public use. Gen. Stat., Chap. 94, art. 1, secs. 45-50; Kentucky Stat., sec. 815; Butte, A. & P. Railroad Company v. Mon. U. R. R. Co., 16 Mon., 504; Chollette v. Omaha & R. V. R. R. Co., 4 L. R. A., 135.

3. The operation of the quarry railroad by the Louisville & Nashville Railroad Company under a contract with the Stone Company, by which it was prohibited from transporting freight for others, was void as a preferential arrangement. Louisville

& Nashville R. R. Co. v. Pittsburg & Kanawha Coal Co., 23 Ky. Rep., 1318; Con. of Ky., sec. 214; Sou. Express Co. v. N. C. & St. L. R. R. Co., 1 Ky. Rep., 42; Sou. Express Co. v. St. Louis, &c. Ry. Co., 10 Fed., 210, 869; Hays v. Penn. R. R. Co., 10 Fed., 309; Kettle River R. R. Co. v. Eastern R. R. Co., 41 Minn., 461.

4. The railroad to the quarries was built as part consideration of the lease to McDonald & Co., and inured to the benefit of the appellee, Oman, as a vendee of one of the lessors.

5. So long as the railroad remains and is operated by the Louisville & Nashville Railroad Company, the appellee is entitled to have freight transported over it.

6. The arrangement, or contract, under which the Louisville company operates the quarry railroad, in so far as it seeks to impress a limitation on the use which prevents the railroad company from discharging its duty as a common carrier, is void. Met. T. Co. v. C. S. & H. Ry. Co., 95 Fed., 18; Missouri v. Bell, 23 Fed., 539; State v. D. & A. Telegraph & Tel Co, 47 Fed., 633; D. & A. Tel. & Tel. Co. v. State, 50 Fed., 677; Heaton-Penn. Button Fastener Co. v. Eureka S. Co., 77 Fed., 288.

7. A common carrier can not create itself, or promote the creation of a monopoly by another, in the transportation of freight or passengers, either upon its road or to or from its stations. McConnell v. Pedigo, 92 Ky., 465; Camblos v. Phil. & R. R. Co., Fed. Case No. 2331.

8. The construction of the quarry railroad was a part of the consideration of the lease to McDonald & Co. for thirty years, and the appellee, as owner of the remainder in fee of this release, is entitled, under that contract, to have the service of the road in transporting freight to and from the quarry, and having a lease upon the land over which the road, in part, is built, she has the right to go over and upon this land to the railroad. 20 A. & E. Ency. of Law, p. 774.

OPINION OF THE COURT BY JUDGE BARKER, AFFIRMING AS TO L. & N. R. R. Co., AND REVERSING AS TO BEDFORD-BOWLING GREEN STONE COMPANY.

This action involves the rights of appellees to the use of a railroad switch which runs from the Memphis Junction of the Louisville & Nashville Railroad Company's line in Warren county, Kentucky, about 3½ miles, to the quarry of the appellant Bedford-Bowling Green Stone Company. It is not necessary, for the purpose of this case to

set forth the statements in the pleadings with any minute particularity. It is sufficient to say that the Bedford-Bowling Green Stone Company claims to be the exclusive owner of the switch in question; and, on the other hand, the appellees claim a part ownership, with the right to its use, and, if that be not so, that it is a part of the railroad system of the appellant Louisville & Nashville Railroad Company, and, as such, they have the right of shipment over it, and that the Louisville & Nashville Railroad Company has no legal right, as a common carrier, to refuse to transport freight along its line, and that the pleadings properly present these issues for adjudication. Upon the trial below, the learned chancellor held that the appellees were part owners of the switch in question, and enjoined the Bedford-Bowling Green Stone Company from interfering with their rights to its use, and required, by a mandatory injunction, the appellant Louisville & Nashville Railroad Company to transport appellees' freight over it to their quarry, at or near the end of the line. From this judgment an appeal has been prosecuted to this court.

In 1870 Hugh F. Smith and his wife, Lydia A. Smith, were the owners in fee simple of a tract of land in Warren county, Kentucky, known as the "Howarth Tract;" and they and one B. C. Sanders, together, owned the perpetual right to quarry the fine cutting stone in an adjoining tract, known as the "Loving Land." Smith and wife owned an undivided two-thirds interest, and B. C. Sanders an undivided one-third interest. Sanders had no interest in the Howarth land. On the 22d day of January, 1870, Smith and wife and B. C. Sanders entered into a written lease with Owen McDonald & Co., whereby they leased to them for a term of 30 years the right to work and to use all the fine cutting stone contained on the two tracts of land. In

consideration of this lease, Owen McDonald & Co. bound themselves to build, or cause to be built, within three years from the date of the lease, a railroad from the quarry on the land to the Memphis Branch of the Louisville & Nashville Railroad Company, and to commence operations in the quarry within three years from the date of the lease; and it was stipulated that unless this was done the lease was to be null and void. Owen McDonald & Co. were also to pay to the lessors, as a royalty, $1 for each 100 feet of all stone suitable for cutting or dressing quarried by the lessees during the term of the lease, and covenanted to keep their books open to the inspection of the lessors, so that they might settle between themselves as to their rights in the royalty. At the expiration of the term of the lease, it was stipulated that the lessees could remove all the tools and machinery, unless the lessors paid a fair price for them. Afterwards Owen McDonald & Co. conveyed their interest in the lease to the White Stone Quarry Company, which acquired the right of way from the stone quarry to the Memphis Junction of the Louisville & Nashville Railroad Company, and built thereon the railroad switch involved in this litigation, since which time the interests originally acquired by Owen McDonald & Co. have passed in regular succession from the White Stone Quarry Company to the Belknap & Dumesnil Stone Company, and from it to the Bowling Green Stone Company, and from it to the Columbia Finance & Trust Company, which conveyed it to the Bedford-Bowling Green Stone Company. In 1888 the Belknap & Dumesnil Stone Company purchased all the interests of the Smiths in both the Howarth and the Loving tracts, and thus became the owner in fee simple of the first, and the owner of a two-thirds interest in the cutting stone in the latter tract. In 1878 B. C. Sanders, being in-

debted to Milton Feland and McElwain, conveyed to them his interest in the cutting stone in the Loving tract. Feland having died, in a suit to settle his estate his interest in the cutting stone was sold, and bought by appellee, John Oman. McElwain in 1885 sold his interest in the cutting stone to Sallie M. Smith, and she sold it to the Belknap & Dumesnil Stone Company in 1888, so that at the expiration of the lease in 1900, John Oman was the owner of a one-third interest in the cutting stone in the Loving tract, and the Bedford-Bowling Green Stone Company was the owner in fee simple of the Howarth tract, and of an undivided two-thirds interest in the cutting stone in the Loving tract. Between them, and in the proportions mentioned, they were the owners of all the property demised by the lease of 1870. After the expiration of the lease the Columbia Finance & Trust Company, appellants' vendor, and the appellee John Oman, in an action that was pending in the Warren circuit court between John Oman and the Bowling Green Stone Company, etc., entered into an agreement by which that case was settled, and a division made between the parties at interest as to their rights in the cutting stone in the Loving tract. In pursuance of this agreement commissioners were appointed to divide the interests of the parties in the cutting stone, which having been made, the commissioner of the court conveyed to each party to the settlement their respective portions. This deed having been put to record, there is now no dispute as to the rights of the parties to this litigation on this question.

John Oman, having opened a quarry on the Loving tract, set apart to him, very near the quarry operated by the Bedford-Bowling Green Stone Company, is naturally very anxious to use the switch in transporting his machinery to his quarry, and in transporting his stone to the main line

of the Louisville & Nashville Railroad; it being impractica-
ble to haul such heavy freight for so long a distance in any
other way.   We do not think, however, he has any interest
in the switch in question.   It was built by the White Stone
Quarry Company, a remote vendor of appellants, under the
lease of 1870, and that instrument contains no covenant for
its conveyance to the lessors at its expiration; at which time,
being a part of the realty, in the absence of any stipulation
governing the matter, it became the property of the own-
ers of the soil to which it was affixed.   In order for appel-
lee Oman to prove himself entitled to an interest in the
railroad switch involved in this litigation, it was incum-
bent upon him to exhibit some muniment of title by which
he acquired an interest in it.   This he has wholly failed to
do.   Even should it be held that his remote vendor, B. C.
Sanders, acquired an interest by the terms of the lease of
1870, it would still be necessary for him to show some
transmission of that right to him.   He purchased the inter-
est he holds at a judicial sale in the settlement of Milton
Feland's estate, and the deed of the commissioner of the
court in that case to him, after describing the land contain-
ing the cutting stone to be conveyed, contains this stipula-
tion: "That which is conveyed is the interest of M. C.
Feland in the cutting stone on the land aforesaid, being
one-third interest."   So that all he purchased was an in-
terest in the cutting stone, and not an interest in the rail-
road switch.

The railroad switch involved in this litigation was built
by the White Stone Quarry Company, and in so doing they
entered into a contract with the Louisville & Nashville
Railroad Company, by which it leased or hired all of the
material which went into it, from the railroad company,
upon a stipulated rent, to be equal to 6 per cent. per an-

num on the value of the material furnished; the quarry company to keep the roadway in good condition, either by doing the work itself, or paying the railroad company for what it might do in this regard. Afterwards, on the 23d day of May, 1893, the property having passed into the ownership of the Bowling Green Stone Company, a new contract was made between it and the railroad company, in which all of the terms and conditions of the original contract concerning material furnished by the railroad company, and the rental therefor due from the quarry company, were recited, and further that, "whereas, said Bowling Green Stone Company wishes to increase its business and has represented to said Louisville & Nashville Railroad Company that if it should be relieved from the payment of said rent and for said repairs, it could largely increase its business, which would result in an increase of traffic for said Louisville & Nashville Railroad Company: Now, therefore, in consideration of the premises, the said Louisville & Nashville Railroad Company, from and after this date, releases the said Bowling Green Stone Company from the payment of rent on said material, and also agrees to keep said track in repair during the continuation of this contract without cost to said Bowling Green Stone Company, reserving the right, however, to discontinue doing so, and the right to cancel this contract on 60 days' notice in writing to said Bowling Green Stone Company whenever and at any time in the opinion of the management of said Louisville & Nashville Railroad Company the shipments from said quarries to points on and reached via said Louisville & Nashville Railroad Company's lines are not sufficient to justify the maintenance of the track by said Louisville & Nashville Railroad Company." This contract, and other

evidence in the record bearing upon the question, show that the Louisville & Nashville Railroad Company, during the continuance of this last contract, has the control and management of the railroad switch. It owns, controls, and operates the engines and other rolling stock which pass over the line. It keeps the roadbed in repair, and owns all of the material which goes into it. So far as this record shows, it exercises the same control and dominion over this line that it does over any other part of its system; and we think, by the terms of the contract in question, the switch, during the continuance of the contract, at least, becomes a part of the general system of the Louisville & Nashville Railroad Company. This being so, it can not lawfully refuse to receive and transport freight belonging to appellees to and from such reasonable points along the line at which they may lawfully ship or receive it. This is clearly settled by the opinion of this court in the case of the Louisville & Nashville Railroad Company v. Pittsburg & Kanawha Coal Company, 111 Ky., 960, 23 R., 1318, 64 S. W., 969, 55 L. R. A., 601, in which it is said: "Railroad companies are *quasi* public corporations, created for the purpose of exercising the functions and performing the duties of common carriers. These duties are defined by law, and in accepting their charters they necessarily take with them all the duties and liabilities annexed; and they are required to supply, to the extent of their resources, adequate facilities for the transaction of all business offered, and to deal fairly and impartially with their patrons. McCoy v. C., I. St. L. & C. R. R. Co. (C. C.), 13 Fed., 5; Munn v. Illinois, 94 U. S., 126, 24 L. Ed., 77. And they have no right to contract with a corporation or individual to give exclusive rights to transfer any commodity over any part of their line. . . . The contention is made for the rail-

road company that appellee is not entitled to a mandatory
injunction requiring them to fulfill their corporate obliga-
tions to furnish impartial service, because they have ade-
quate relief in a court of law by suit to recover damages
for the wrong done.   Undoubtedly this remedy exists, but
it is not the only means of relief which the law provides.
By accepting its charter the railroad company assumed ob-
ligations to the public, and the duty of enforcing these ob-
ligations, in the absence of some statute providing a differ-
ent remedy, necessarily devolves upon courts of equity.
Their jurisdiction to grant relief of this sort has been well
established and defined.   Hays v. Pennsylvania Co. (C. C.),
12 Fed., 309; also the Express Case, decided by Justice
Miller and Judge McCreary (C. C.), 10 Fed., 869, and the
case of the State v. The Hartford & New Haven Railroad
Co., 29 Conn., 546.  It is plainly laid down in these and
other cases that a railway company may be compelled by a
mandatory injunction to carry out the object for which
they were created, and to impartially and without discrim-
ination serve the public."

While it is the duty of the railroad company thus to
receive and transfer freight for appellee, this can be done
only at points along the line of the railroad switch in ques-
tion at which appellee may lawfully receive or ship it.   He
has no right to trespass upon the private property of ap-
pellants in order to reach the road.   We think, under his
right to the cutting stone, as now fixed by contract, appel-
lee is entitled to ship and receive freight at any reasonable
point along the road, as now constructed, which lies upon
any part of the Loving tract, which was set apart and con-
veyed to him in the settlement had between him and the
Columbia Finance & Trust Company.   Although the part
of the Loving tract upon which the railroad switch lies

Bedford-Bowling Green Stone Co., &c. v. Oman, &c.

(being No. 4 on the plat) is now owned in fee by appellants
Bedford-Bowling Green Stone Company, the right to take
the cutting stone which belongs to appellee necessarily
carries with it such reasonable use of the surface over the
stone as is necessary to make appellees' interest in the land
available. If it should be found impracticable, from the
topography of the land, to reach the railroad on tract No.
4, then appellees may acquire the right of way by contract
with appellants, or condemnation under section 815 of the
Kentucky Statutes, to any practicable point on the line
which will not unnecessarily interfere with · appellants'
quarry as now operated.

For the reasons herein given, this case is affirmed as to
the Louisville & Nashville Railroad Company and reversed
as to the Bedford-Bowling Green Stone Company, for pro-
ceedings consistent with this opinion.

Whole court sitting, except Judge Settle.

Petitions for rehearing and for modification and exten-
sion of the opinion overruled.