(76 South. 862)

## ALABAMA CENT. R. CO. v. ALABAMA PUBLIC SERVICE COMMISSION et al.
### (3 Div. 306.)

(Supreme Court of Alabama. Nov. 15, 1917.)

1. CARRIERS ⬳13(1)—USE OF TRACKS—CONTRACTS—DISCRIMINATION.

Conceding a contract between a common carrier and a logging company, by which the carrier was allowed to use the rails of a logging company for operating trains on condition that it should haul no pine logs for any other than the logging company, was void as to the condition, it afforded no basis for requiring the carrier to haul pine logs for another person, since, if the contract were void, the carrier had no rights whatever, and could not enter and use the rails, and, if it were valid, it could not be interfered with.

2. CARRIERS ⬳13(1)—PUBLIC SERVICE COMMISSION — FACILITIES — DISCRIMINATION — POWERS.

Carrier, owning or leasing a line of road, may be compelled by the Public Service Commission to give equal facilities to all persons of the same class, and cannot by contract with some customers exempt itself from treating all alike.

3. CARRIERS ⬳13(1)—PUBLIC SERVICE COMMISSION — FACILITIES — DISCRIMINATION — POWERS.

If a common carrier, having a mere license to use rails of a logging company, has by its contract agreed not to give equal service to competitors of the logging company, it cannot be compelled to do so, though the contract is void; the Public Service Commission not being empowered to make a new contract for the parties.

4. RAILROADS ⬳225—PUBLIC SERVICE COMMISSION—FACILITIES FOR SHIPMENT—SIDE TRACKS.

The Public Service Commission had no power to compel the railroad to construct a side track to serve a competitor of the lumber company, since such an order would make the carrier a trespasser; nor could the Commission legalize the trespass, and so exempt the carrier from liability.

Appeal from Circuit Court, Montgomery County; Gaston Gunter, Judge.

Injunction by the Alabama Central Railroad Company against the Alabama Public Service Commission and others. Decree sustaining demurrer to the bill, and the complainant appeals. Reversed, rendered, and remanded.

Appellant is a common carrier by rail. It owns and operates a railroad from Jasper, Ala., to Manchester, Ala., a distance of six miles. The Manchester Sawmill Company, a purely private corporation engaged in the lumber business, owns and operates a logging road, which extends several miles north of Manchester and into a belt of pine timber which is being cut and manufactured into lumber by the Sawmill Company, and over said logging road this purely private company transports its logs and its manufactured lumber to and from its mills—its logs from the forest to its mills situate on said road, and its lumber from the mills to Manchester, and thence to other markets over lines of public service corporations.

About April 10, 1915, appellant, a public service corporation, and the Sawmill Company entered into a contract whereby appellant acquired the license or right to operate its trains and service over the logging road, for the purpose of carrying freight and passengers for hire, but did not acquire the right to haul or transport pine logs or pine lumber over such logging road, except for its own use. The Sawmill Company, however, retained the paramount right to the use of the tracks, to the end that it should not be delayed in the transaction of its own business. The Sawmill Company also retained or reserved the right to take up the track, or change the location thereof, at its will or pleasure, and by the contract the Sawmill Company was under no duty to keep the logging road in such repair as to be suitable for operating trains thereon. Appellant, however, had the right, under certain conditions, to repair and keep up, and, under certain other conditions, to purchase the track and the rights of the Sawmill Company. Appellant also acquired the right to use a Y of the logging company, and to erect upon the property of the Sawmill Company switches, side tracks, and platforms, for loading purposes, which might be necessary to the conduct of its business as a common carrier, but subject to the reasonable regulations of the Sawmill Company.

About October 27, 1916, while appellant was thus using the logging road, M. Aaron and J. H. McNeal, a partnership, applied to the Alabama Public Service Commission to require appellant to put in a side track on the logging road of the Sawmill Company, for the use of the partnership, in the transporting of pine lumber and other shipments through the agency of appellant as a common carrier. A hearing was had before the Commission, and appellant was ordered to proceed to put in such side track. Appellant notified the Sawmill Company of the proceedings, and of the order requiring the construction of the side track, and the Sawmill Company would not consent to the construction of the side track. To the notice the Sawmill Company made this reply:

"Dec. 7, 1916.

"Mr. W. C. Davis, Jasper, Ala.—Dear Sir: Aaron & McNeal v. Ala. Central R. R. Co. Replying to your notice that the Alabama Railroad Commission has ordered the Alabama Central Railroad to put in a side track for Aaron & McNeal's sawmill on the logging road of the Manchester Sawmills, we beg to say, in behalf of the Manchester Sawmills, that the logging road, together with the right of way upon which it is built, belongs to them; that it is purely a private industry, and not a common carrier, and that it does not intend, at its expense, to furnish a logging road for its competitors in the lumber business; and that it will not permit the Alabama Central to build any spur track off of its logging road for the accommodation of McNeal & Aaron.

"The Manchester Sawmills will resist to the full extent of the law any effort to build such a track. They will not only have any persons attempting to do so arrested for trespass, but will take such forcible action as it is advised it has power to take, to prevent the construction of such a track, and, if such a track is surreptitiously built, they will promptly tear the same out. We are writing you so that you may fully understand that the Manchester Sawmills will under no conditions permit the Alabama Central to build a switch or side track, as contemplated, for the Aaron & McNeal Sawmill, unless they are required, by the highest court to which they can go, to do so.

"We hope this statement will leave no misunderstanding of their attitude.

"Very sincerely,

"JHBjr.   [Signed]   Bankhead & Bankhead."

Appellant then filed this its bill, in the circuit court of Montgomery county, against the members of the Public Service Commission, to enjoin them from further enforcing the order requiring the construction of the side track as prayed in the petition, and as ordered to be done by the Commission. The Commission, or its members, demurred to the bill, for want of equity. The trial court sustained the demurrer, and from its decree in that behalf appellant prosecutes this appeal.

W. C. Davis, of Jasper, for appellant. W. L. Martin, Atty. Gen., and Lawrence E. Brown, Asst. Atty. Gen., for appellees.

MAYFIELD, J. (after stating the facts as above). [1, 2] If it be conceded that the contract between appellant and the Sawmill Company, for the use of the logging track of the latter by the former as a common carrier, is void by reason of the stipulation that the carrier should not haul pine logs or pine lumber over the logging road, or for other reasons, this would not authorize the Public Service Commission to require appellant to violate its void agreement, or to trespass upon, or use without authority, the property of the logging company. The only right, title, or interest which appellant has in or to the logging road depends solely upon contract, and if the contract is void then appellant has no rights whatever—has no right to the use of the logging road for any purpose. While the contract authorizes appellant to purchase the logging road, appellant has never exercised this option; and neither the Commission nor the courts can compel it to exercise the option. Neither the Commission nor the courts have the power to make or alter contracts between parties. If the carrier owned or controlled the logging road under a valid lease, then the Commission could compel it to serve all the public of the same class alike, and to provide facilities reasonably adequate to accommodate shippers desiring service of the carrier. In such cases, where the carrier owns, or, by lease or otherwise, has the control of, the tracks and lines over which it operates its trains, it can be required to serve all customers of the same class on equal terms, and thus avoid discriminations; and the carrier cannot, by contract with some of its customers or with third parties, exempt or excuse itself from thus treating all alike, and thus discharging its duties as common carrier to the public. But where the carrier does not own or control the track which it uses, but uses the same as a mere licensee, or under an agreement such as is found in this case, the Commission nor the courts cannot authorize, much less compel, the carrier, thus operating under a mere license, to improve or change the main lines, side tracks, or the loading facilities of the line over which it is so operating, without right of control, but with the mere right to repair and keep up the lines, as in this case.

This distinction is well pointed out by the courts, state and federal, in the cases of Bedford-Bowling Green Co. v. Oman, 134 Fed. 64, 67 C. C. A. 190, and (C. C.) 134 Fed. 441, and 115 Ky. 369, 73 S. W. 1038. The holdings in these cases, which are here applicable, are well stated in headnotes in the report of the cases, as follows:

"2. *Railroads — Private Switches — Use for Public Business.* Persons who have no property rights in a private switch over another's land cannot compel the latter to permit the railroad to receive and ship their freight over the switch to the railroad's own track.

"3. *Same—Sale of Switch—Right of Stranger to Complain.* A contract by which a railroad operates, in its capacity as common carrier, a switch over private property, may be abrogated at will by the railroad and the owner of the property, and the switch may be sold to the latter, regardless of the motives of the parties to the contract in so doing; and a stranger to the contract, who is interested in the maintenance of the switch by the railroad as a carrier, cannot complain of the contract as fraudulent merely because the purchase price was not paid in cash, but promissory notes were given therefor."

"5. *Carriers—Duty to Receive Freight—Private Switches.* A common carrier cannot be required to receive freight on or along a private switch, but its duty in that regard is confined and limited to its own depots or shipping and receiving points."

(C. C.) 134 Fed. 441.

[3] If the logging road in question were a public highway, or a railroad in which the public had acquired rights by condemnation proceedings or by dedication to a public use, and its owners or those who had acquired control of it were common carriers, or were engaged in the business of a public service, then the Public Service Commission or the courts, when authorized by the Legislature, could regulate and control the use of the railroad so as to serve the public, and do so without discrimination. Here, however, the road involved is a private road and not a public one, and those who own, and have the exclusive control of it, are private individuals or corporations, who have merely consented or agreed that appellant, a public service corporation, may use it under certain restrictions and regulations. It may be, as we have said, that this contract or agreement is void, because against public policy; but, if so, it cannot be relieved against by

compelling the parties to make a new contract, nor by compelling them to so modify it as to make it legal and binding on both parties. Neither the Public Service Commission nor the courts possess such powers. While the common carrier is so using this private road under a void contract, it may be liable as for damages for unwarranted discriminations, and its illegal contract might not excuse or justify for such discriminations; yet the common carrier has no right to put in switches or side tracks on this logging road without the consent of its owners, and, if such were placed, the owners would have the absolute right to remove them, and even the main line, and to wholly prevent the use of the road by appellant or by the public. Surely the Public Service Commission nor the courts ought to compel a common carrier to use or improve private property in a way or manner in which it has no right so to use it, and could not voluntarily use it.

It may be (but as to this we do not decide) that, if the proceeding to require the construction of the side track were against the logging company, this decision would be different—that the use to which the logging company has put its private road, or allowed it to be put, in virtue of our Constitution and statutes, would be held to have converted the private road into a public one, and brought it within the jurisdiction of the Public Service Commission. But this question is not before us; there has been no proceeding against the logging company; it has had no opportunity of being heard and is not even a party to this bill.

[4] Here, however, the only party who would have a right to voluntarily construct, or authorize the construction of, the side track, is not before the court, and was not before the Commission. Conceding that the facts stated in the bill are true—and on demurrer the court must treat them so to be—appellant not only has no right to do what the Commission has ordered it to do but is under contract or agreement not to do that identical thing; and, should it obey the Commission's order, it would forfeit all right to use any part of the logging road, and be subject to suit for damages by the owners of the road, and if it built the side track voluntarily it would be a trespasser. Unquestionably, the Commission has no power to compel appellant to be a trespasser nor to exempt appellant from liability, should it build the side track. as for a trespass. Nor would the Commission's order to build the side track have the effect to make its construction rightful and lawful. If appellant owned. or had the control of. the logging road which it was so using, it could avoid being a trespasser in constructing the side track by purchasing the land; but it neither owns nor controls the logging road to the extent that it would have

the right to condemn to such end. If it had the right and power to condemn, then it is possible that it might be compelled to condemn; but having no such right to condemn the particular land in question. for a side track to be used in connection with the logging road, it ought not to be compelled to take it by force. nor to condemn it.

There is no contention that it should build a side track or spur from the point in question to its own line of road, and no such order has been sought or made. The bill shows that the only right it has, to operate its trains over the logging road rests solely upon a contract. which contract not only fails to authorize it to do what the Commission directs it to do, on and with the property of the logging road, but expressly prohibits it from doing; and that if appellant voluntarily or by force of the act and order of the Commission, does the acts so required of it, it thereby forfeits all its rights under the contract, and subjects itself to an action for damages.

To this the answer is made that such provisions of the contract are void as against public policy, and that they are not binding upon the parties or the public. This may be true; but, if so, the fact confers no right or power upon the Commission or the courts to make a new contract or to modify the one made, in material respects, to the extent that one party thereto would not have made the modified contract originally. In other words, the contract cannot be enforced unless it be valid and binding. Moreover to enforce the order of the Commission would violate the contract, instead of enforcing it as made.

In speaking of void leases of one road, to operate that of another, the law is thus stated by Mr. Elliott:

"It is evident that it may be liable for its torts in operating the road, and yet not bound to perform the obligations which the law requires the lessor to perform. If the lease is void, it neither confers a right nor creates a duty. In a well-reasoned opinion it was adjudged that. where a lease was executed without authority. the lessee could not be compelled to operate the leased road, and that mandamus would not lie." Railroads, vol. 1 (2d Ed.) § 457.

In a note the author cites and quotes from the case as follows:

"People v. Colorado, etc., R. Co. [C. C.] 42 Fed. 638. In the course of the opinion Caldwell, J., said: 'As the relator and the respondents are agreed that the lease was void, that ends the case as to the Union Pacific Railroad Company; for, if the lease is void, it imposes no obligation on the Union Pacific Railroad Company to operate the road.' The decision was placed on the ground that the lease was void, for it was affirmed that mandamus lies where there is a duty to operate a railroad. The court cited State v. Sioux City. etc., R. Co., 7 Neb. 357; Commonwealth v. Fitchburgh, etc., R. Co., 12 Gray (Mass.) 180." Id., note to § 457.

These authorities are a complete answer to the question of the right of the Commission

to compel appellant to operate under a void lease or contract.

The case in hand is distinguishable from the cases relied upon by appellees and by the trial court. In Agee's Case, 142 Ala. 353, 37 South. 680, it was merely held that, while a common carrier is using a spur or side track in its business as a common carrier, it will not be allowed to discriminate between customers of the same class, nor even by contract with other parties could it justify its discrimination.

The Oman Case, 115 Ky. 369, 73 S. W. 1038, has heretofore been shown not to be applicable to a case like this. The other cases relied upon, reported in State v. Atlantic Coast Line R. Co., 52 Fla. 646, 41 South. 705, 12 L. R. A. (N. S.) 506, Chesapeake & O. Ry. Co. v. Standard Lumber Co., 174 Fed. 107, 98 C. C. A. 81, and Louisville & Nashville R. Co. v. Pittsburgh & Kanawha Coal Co., 111 Ky. 960, 64 S. W. 969, 55 L. R. A. 601, 98 Am. St. Rep. 447, are distinguishable, because there the common carrier either owned or controlled the line of road and side tracks in question. Here appellant does not own the main line of the logging road, not even the ties and the rails, much less the right of way, and has no control thereof, except to run its trains thereover, and to repair the same strictly for the purposes and under the rights acquired by its contract. If its contract is valid, it has agreed not to do what the Commission requires it to do. If its contract is void, it has no right to use the logging road for any purpose, much less to put in or use a side track on the right of way of the logging road. While under the contract it has the option to buy the logging road, the courts cannot compel it to exercise the option. If the facts averred in the bill are true, it would be utterly useless to compel appellant to put in a side track, for the reason that the logging company, who own the land and the road, would not only remove it, but also the main track at that point, and absolutely prevent its use by appellant for the purposes intended by the order.

It therefore follows that the trial court was in error in sustaining the demurrers to the bill, but should have overruled them.

Reversed, rendered, and remanded.

ANDERSON, C. J., and SOMERVILLE and THOMAS, JJ., concur.