(79 South. 833)

No. 23047.

EMPIRE RICE MILLING CO. et al. v. RAILROAD COMMISSION OF LOUISIANA.

(June 29, 1918. Rehearing Denied Nov. 4, 1918.)

*(Syllabus by the Court.)*

1. CARRIERS ⬯10—RAILROAD COMMISSION—CREATION AND POWERS.

The Railroad Commission of Louisiana is established in the Constitution of the state; and to it is given certain powers and authority over railroads, steamboats, water craft, sleeping car, freight, and passenger tariffs and service, express rates, telephone and telegraph charges, etc.

2. CARRIERS ⬯18(1)—ORDERS OF RAILROAD COMMISSION—COMPLAINT—JURISDICTION OF COURTS.

On the complaint of a party in interest that any rate, classification, rule, charge, order, act, or regulation adopted by the commission is beyond the power of the commission, or is unreasonable, discriminatory, extortionate, or unjust, the courts of the state have jurisdiction to entertain the complaint.

3. CARRIERS ⬯18(1)—MILLING IN TRANSIT—RULE OF RAILROAD COMMISSION—CONTEST.

Milling in transit is a burden placed upon the railroads, and the validity of such a rule may be contested by the railroads.

4. CARRIERS ⬯11—MILLING IN TRANSIT—COMPENSATORY RATES.

Milling in transit is not an unusual privilege granted by railroads to their patrons, and it is not unusual or unjust to impose such an obligation upon railroads; provided that the rates are compensatory for the additional burden placed upon them.

5. CARRIERS ☞18(1)—MILLING IN TRANSIT—OBLIGATION OF RAILROAD—CONTEST.

The obligation of milling in transit cannot be contested by any other person than the railroads upon which it is placed.

*(Additional Syllabus by Editorial Staff.)*

6. CARRIERS ☞18(3)—ORDERS OF RAILROAD COMMISSION—VALIDITY—PRESUMPTION AND BURDEN OF PROOF.

The presumption is that Railroad Commission acted justly as to all parties concerned in adopting a milling in transit and a rate order, and courts will not interfere without clear evidence that a party's legal rights have been invaded, or that rate is unreasonable, discriminatory, or extortionate.

Appeal from Twenty-Second Judicial District Court, Parish of East Baton Rouge; H. F. Brunot, Judge.

Suit by the Empire Rice Milling Company and others against the Railroad Commission of Louisiana to set aside an order of the commission, with intervention by the Lake Charles Milling Company and by the Southern Rice Growers' Association and others. Judgment for defendant and for interveners, and plaintiffs appeal. Affirmed.

Arthur A. Moreno, of New Orleans, for appellants. W. M. Barrow, Asst. Atty. Gen., for appellee Railroad Commission of Louisiana. McCoy & Moss, of Lake Charles, for appellee Lake Charles Rice Milling Co. Medlenka & Bruner, of Crowley, for appellees Southern Rice Growers' Ass'n and others.

SOMMERVILLE, J. The plaintiffs, thirteen in number, are the New Orleans Joint Traffic Bureau of the New Orleans Board of Trade, Limited, six rice mills, and six rice merchants and commercial firms, all located in New Orleans. They allege that they are buyers, sellers, and millers of rice; that they are "parties in interest" in and to order No. 2116 adopted by the Railroad Commission of Louisiana; that order No. 2116 establishes tariffs on dressed and rough rice which are increases in rates over those prevailing at the time of the adoption of said order; that

defendant has also ordered the railroads to establish the privilege of milling rice in transit on all of the roads throughout the state; that the imposition of this burden upon the railroads was the cause of the increase in the tariffs on cleaned and rough rice to be paid by plaintiffs;' and that such increase in rates, due to milling in transit, is unreasonable, unjust, discriminatory, and extortionate when applied to the shipments of rice made by them. They pray:

"That there be judgment in favor of petitioners and against the said Railroad Commission of Louisiana avoiding, annulling, and canceling the said order No. 2116."

The defendant commission answered that milling in transit was an ordinary rule and regulation of and for railroad companies and of railroad commissions; that the tariffs on rice established by it were in every way reasonable and just; and that the fixing of rates and the establishing of rules and regulations for the government of railroads were entirely within the power and authority granted it in article 284 of the Constitution.

The Southern Rice Growers' Association, a Texas corporation, domiciled in the county of Jefferson, state of Texas, and largely composed of rice producers of the states of Louisiana, Texas, and Arkansas, together with seven rice growers of Acadia parish, intervened in the suit, and joined defendant in support of the validity and regularity of order No. 2116.

A second petition of intervention was filed by the Lake Charles Rice Milling Company of Louisiana, which also joined the defendant.

There was judgment in favor of the defendant and interveners, and plaintiffs have appealed.

The contest presented in this suit appears to be between the rice millers and merchants of New Orleans, and the rice producers and one or two independent rice millers outside of the city of New Orleans.

It is said there are thirty-one rice mills in the state; but only seven or eight have made themselves parties to this suit. It may be that the others are not interested in order No. 2116. Some of them may be simply rice mills which receive rice for milling. and do not pay the shipping rates. They are the consignees, while the producers are the consignors, and the latter pay the freight. The producers, or rice growers, are asking that the tariffs be maintained. Or, it may be some of the out of town mills receive much of the rough rice which they may have purchased in wagons and barges, which is therefore not affected by the tariffs fixed for railroads. Or, as buyers of rough rice which is received by them over a railroad, they get the benefit of the milling in transit; and therefore they have no cause for complaint against the established rules and rates.

It does not appear how the New Orleans Joint Traffic Bureau of the New Orleans Board of Trade, Limited, is a person interested in the rates paid by the shippers of rice. The rice mills of New Orleans, simply as millers of rice, and not as owners and shippers, would not be interested in the freight rates either; but they, together with the other plaintiffs, allege that they are buyers and sellers of rice, and, as owners and shippers, they are required to pay the increased freight rates on rough rice; and they are therefore injured by the adoption of the milling in transit rule, and the increase in the tariff.

Order 2116 is really in two parts, with the two parts depending upon one another. It orders the railroads to grant the privilege of milling rice in transit; and it increases the tariffs on rice, because of the increased burden of milling in transit placed on the railroads. That is just, and not unjust. It is fair, and not discriminatory. It is, in the opinion of the commission, for the good of the public; and, on its face, order 2116 is valid.

It results from the contentions and concessions of the respective parties that the controversy is reduced to a single issue: What was the nature and character of the order made by the commission? What, in substance, was the power which the commission exercised in making the order?

Plaintiffs on their brief say:

"The issue herein is not as to the correctness of an order of an administrative body, but as to the power of the Railroad Commission to make it, and from this viewpoint the facts upon which the order rests become immaterial."

They also say:

"The mass of testimony in the record is almost appalling and would have entailed a large amount of work on the court, but fortunately the brief of interveners tenders an issue of law rather than fact, obviating the need of reading all this testimony. An examination of the purpose of the order under attack, as found within the order itself, also shows that the issue here is not the correctness of an order of an administrative body, but the power of that body to make the order. Order 2116 of the Railroad Commission compelled the carriers to grant milling in transit and raised the rates through the whole field of rice transportation. * * * That it is not claimed for the order (by defendant) that its rates are the measure of the services, but its virtue lies in the fact that it equalizes the cost of transportation between millers, irrespective of the value of the transportation each demands. The purpose of the order admittedly is to foster competition and increase the selling price of rice. The defense of order 2116 has rested on no other foundation, and, therefore, in the clear light of this frank statement of the purpose of the order the whole voluminous record of facts disappears, and the question resolves itself, not into a question of the expediency of the order from a transportation standpoint, but a question of the power of the Railroad Commission to make an order that has as its end the regulation of market conditions. Because there is only a question of law involved, it is not even necessary to read the voluminous transcripts."

[1] The State Railroad Commission is an administrative body, as was decided in the case of Morgan's Louisiana & T. R. R. & S. S. Co. v. Railroad Commission, 109 La. 247, 33 South. 214. It was further said in that case:

"It is a matter not debatable that the state, subject to certain limitations, has, in further-

ance of its object of advancing the public good, a power of regulation and control over the action and conduct of those to whom she has granted these rights and franchises. From the very nature of things, there must arise from time to time differences between the corporation, seeking to derive from its corporate rights the utmost personal advantage it can, and the state, seeking to obtain through its conduct and action the greatest good possible for the public. These differences may arise at any time between them upon matters of detail or administration more or less important. As it would be manifestly impossible to anticipate what these causes would be, or when they would arise, different states have found it necessary to constitute a body charged, as their representative, with the duty of guarding the public interests upon this particular subject, to which they have expressly given very broad authority and powers. * * *

"The power, authority, and duty of the latter are not limited merely to matters affecting the public safety or the public health. They extend also to matters concerning public comfort and public convenience, and in the consideration of matters of comfort and convenience the number of persons who may be concerned or interested in some particular matter at some particular point enter as important factors in determining what is proper to be done. * * * As a matter of course, the commission could not, even under expressly delegated powers, act arbitrarily, in manner such as to trench upon the rights of corporations secured to them by law; but, within certain limits, though their action and orders are all subject to review, they are not all subject to reversal. * * * When such a point in the business of the road is reached, the rights of the 'general public' come clearly into view, and it is not for the railroad, but for the commission, to determine how, in what way, and in what place this money is to be expended so as best to subserve their interest. That is a matter submitted to the judgment of the commission, not that of the railroad or of this court, unless the selection trenches upon the legal rights of the railroad corporation. The mere reference of disputed issues between the parties to this court for adjudication was not intended to constitute it an 'administrative' board, revisory in character over the orders and conclusions of the commission. Our action is judicial, not administrative. It was not intended that we should substitute our judgment for that of the commission every time there is a dispute touching the particular place on the line of railroad where it would be best for the public interest that a station or depot should be placed. To come successfully before this court, the appellant must be able to point out some legal right of its own which has been infringed upon. * * *

"A statute or order of railroad commissioners establishing a station or fixing rates of transportation is not to be interfered with, except upon clear and satisfactory evidence, showing that it is unjust and unreasonable."

[2] Plaintiffs concede that the order of the commission complained of is not open to attack in the courts so long as that body has kept within the powers conferred by law. But, they argue, that the order was not the exercise of such authority, but was based upon the assumption of a power not conferred by law; and they quote from the finding of the commission that it took into consideration, in connection with the petition of the rice growers to have the railroads return to the principle of milling rice in transit, the necessity for such a rule in order to give the rice growers of the state a larger field in which to sell their product. Such argument would have force coming from the railroads, if the commission had added an additional burden upon them without providing for reasonable compensation for the additional service. But, in providing for milling in transit, and, at the same time, raising the tariffs, the commission has acted justly towards the railroads, and with full consideration of their legal rights; and the railroads are not complaining.

In raising the rates to be paid by the shippers, the commission has not invaded any legal right of plaintiffs, who are shippers.

The nature and character of the order of the commission was to obtain from the railroads the greatest good for the public, or that portion of the public composed of rice growers and of rice millers who are near the rice fields. That was within the power delegated to it. It acted upon a matter of public convenience; and the administration of its affairs, or the details thereof, will not be interfered with by the courts, where legal rights have not been invaded. The convenience of rice growers was an important factor in determining that railroads should grant to shippers of rice the privilege of milling in transit. And, in considering and determining the matter, the commission has not interfered with any legal right of plaintiffs.

[3-5] Milling in transit has long been a privilege accorded the producers of agricultural products in this and in other states. It has been established by railroads and by railroad commissions. The privilege is given to shippers of corn and other cereals, and it has been stated that the lumber industry of the state could not exist without it. So, in ordering that rice might be milled in transit it would seem that the commission did not act arbitrarily, or in an unreasonable way.

The rice milling privilege as established by the commission is general in its terms and application. It may be availed of by every one shipping rough rice. It may be availed of by the plaintiffs in this case, if, instead of shipping rough rice to the mills in New Orleans, they would ship to the nearer mills from the places where they buy rice, and have it milled there. But plaintiffs, apparently, prefer to do their own milling. That is, of course, their privilege, which order 2116 does not take away from them. It is doubtless of great advantage to establish rice mills in New Orleans, which city is the primary rice market of the country; and these advantages must be taken together with the disadvantages of being far removed from the rice fields, or points where plaintiffs buy rough rice. It is also their privilege to have their rice milled nearer to points of production, and receive the benefits of milling in transit.

It appears in the record that the commission, before it adopted order 2116, had the railroads, producers, shippers, merchants, and rice millers before them and earnestly and diligently inquired into the matter of tariffs on rice and the milling of rice in transit, etc. They deliberately came to the conclusion that the shippers of rice should have the privilege of milling rice in transit, and that the tariffs on cleaned and rough rice should be increased.

[6] The presumption is that the commission has acted with justice to all parties concerned in adopting order 2116; and the courts will not undertake to interfere with the commission in the absence of clear evidence that the plaintiff's legal rights have been invaded, or that the rates fixed are unreasonable, unjust, discriminatory, or extortionate. The evidence offered by plaintiffs has no such tendency.

Besides, the railroads are the parties most interested in the reduction of the tariffs involved, and they are not parties to the suit. They would be entitled to a hearing in court before their legal rights were taken from them.

The Constitution confers upon the Railroad Commission, and not upon the courts, the power and authority:

"To make reasonable and just rates, charges and regulations, to govern and regulate railroads * * * freight and passenger tariffs and service, * * * to correct abuses, and prevent unjust discrimination and extortion in the rates for the same, on the different railroads, * * * and to prevent such companies from charging any greater compensation in the aggregate for the like kind of property or passengers, or messages, for a shorter than a longer distance over the same line, unless authorized by the commission to do so in special cases."

The plaintiffs have not introduced evidence sufficient to show that the railroad commission has acted unreasonably, or unjustly, or without authority, in providing for the milling of rice in transit on the various railroads throughout the state; or that it has acted arbitrarily in fixing the tariffs on rice transported with the state. They have not shown that their legal rights have been interfered with.

The judgment appealed from is affirmed.