40 So.2d 916

BURKE v. LOUISIANA PUBLIC SERV-ICE COMMISSION et al.

No. 39178.

April 25, 1949.

Rehearing Denied May 31, 1949.

Helm & Simon, New Iberia, Sanders, Miller, Downing & Rubin, Baton Rouge, for plaintiff-appellant.

Milling, Godchaux, Saal & Saunders, M. Truman Woodward, Jr., New Orleans, for Guy A. Thompson, Trustee, New Iberia & Northern R. Co., and of Guy A. Thompson, Trustee, Iberia, St. Mary & Eastern R. Co.

Bolivar E. Kemp, Jr., Carroll Buck, 1st Asst. Atty. Gen., Wm. A. Porteous, Jr., 2nd Asst. Atty. Gen., Provost & Ernest, New Iberia, and Breazeale, Sachse & Wilson, Baton Rouge, for appellee.

HAWTHORNE, Justice.

This is an appeal to this court from a judgment of the Nineteenth Judicial District Court for the Parish of East Baton Rouge, affirming Order No. 4721 rendered by the Louisiana Public Service Commission under date of December 10, 1947, which denied to appellant, Perry J. Burke, his application to the Louisiana Public Service Commission for an order directing Guy A. Thompson, trustee for the New Iberia & Northern Railroad Company and the Iberia, St. Mary & Eastern Railroad Company, common carriers subject to the rules and regulations of the Public Service Commission and the statutes and laws of this state (to which we shall hereafter refer as "the railroad"), to furnish to appellant facilities for the transportation of commodities over a certain spur track situated in the City of New Iberia, and to construct, maintain, and operate a switch connection on and across appellant's land to connect with such spur track, and for such other orders as the Commission might deem necessary in the premises.

On March 4, 1946, Perry J. Burke, appellant herein, filed a complaint with the Louisiana Public Service Commission, alleging that the defendant railroad was refusing to extend to him freight service on the spur in question, and praying for the order as set forth above. Edgar P. Folse, Inc., an industry owning property abutting the spur and being served thereby, intervened in the proceedings, praying for the rejection of complainant's demands.

On November 6, 1946, the Commission issued its Order No. 4426 dismissing Burke's complaint and application for the reason that the spur over which complainant sought service was a private industrial spur over which the general public had no right to demand service, and that complainant had no right or cause of action. Burke appealed to the district court from this order, and on July 31, 1947, that court overruled the exception of no cause and no right of action; avoided, vacated, and set aside

the order of the Commission, and remanded the case to the Commission for further proceedings. The court in its reasons for judgment concluded that the ruling of the Commission holding the spur in question to be a private industrial spur over which the general public had not the right to demand service was erroneous.

Pursuant to this decree, the Commission then heard the case on its merits, and on December 10, 1947, issued its Order No. 4721 rejecting the demands of the complainant Burke and dismissing the proceedings. From this order of the Commission Burke again appealed to the district court, and that court on September 10, 1948, affirmed the order of the Commission and dismissed plaintiff's suit. From this judgment Burke has appealed to this court.

The railroad spur over which appellant Burke seeks freight service traverses two blocks of land situated in New Iberia, Louisiana, being designated as Blocks 193 and 198, and the street or highway which lies between them. Block 193 lies somewhat northeast of Block 198, and these two blocks are bounded on the southeast, respectively, by Block 194 and Block 197. But, for the purpose of clarity and simplification, we shall discuss and consider these blocks as if Blocks 198 and 197 were directly south of Blocks 193 and 194. Accordingly, Blocks 193 and 194 are bounded on the north by Bayou Teche, and Blocks 198 and 197 are bounded on the south by the main tracks of the defendant railroad, and Blocks 193 and 194 are separated from Blocks 198 and 197 by Main Street, or U. S. Highway 90.

The spur, after leaving the main tracks on the south side of Block 198, proceeds in an approximately northerly direction near the east boundary of Block 198, crosses Main Street, and continues near the east boundary of Block 193 to a point near Bayou Teche.

The history and background surrounding the building and construction of the spur track are as follows:

On March 18, 1918, Julius Scharff, the owner at that time of Blocks 193 and 198, conveyed to William H. Carver a tract of land out of the northern portion of Block 193 fronting 340 feet more or less on Bayou Teche. (This property is hereafter referred to as "the rice mill property".) This act of sale provides that the property conveyed is bounded on one side by a strip of land 44 feet in width, running from Bayou Teche back to the right-of-way of the Iberia, St. Mary & Eastern Railroad, "which vendor hereby dedicates for the benefit of the property herein conveyed as well as for the use and benefit of vendor's other property for the construction of railroad spur or spurs".

This dedication, 44 feet in width, running from Bayou Teche to the main line of the defendant railroad, comprises what we have designated as the eastern 44 feet of Blocks 193 and 198.

On May 2, 1918, a little over two months after the deed containing this dedication was executed, Julius Scharff conveyed directly to the Iberia, St. Mary & Eastern Railroad Company a strip of land 17 feet wide, eight and one-half feet on each side of the center line of a proposed spur track across Lots 198 and 193 in the City of New Iberia, which center line was particularly located and described in this deed. In this instrument we find the following language: "It is understood and agreed that the strip of land herein conveyed is to be used upon which to construct a switch or spur-track to connect the main line of said railroad company with the rice mill; and should the said strip of land cease to be used in the future for the purposes herein conveyed, then in that event, the said strip of land shall revert to the vendor herein or to his heirs or assigns."

Although the vendor in the act of sale of March 18, 1918, designated the 44-foot strip as a dedication for the construction of railroad spur or spurs, counsel for the railroad in brief before the Commission stated that there was serious doubt whether this grant was effective, since it did not refer to any named grantee, that they knew of no way in which such a dedication could be made to the public for a railroad spur, and that there was no method by which a spur could be built into this strip as it met the railroad at almost a right angle, and apparently it was for these reasons that the grant of May 2, 1918, to the railroad

was executed. To us this explanation seems to be reasonable.

After the execution of this right-of-way deed, the railroad, the grantee named therein, constructed a spur track from its main lines to the rice mill along and over the 17-foot right of way acquired by the railroad from Scharff on May 2, 1918, and this strip on which the railroad spur is situated constitutes the western 17 feet of the 44-foot strip mentioned in the dedication of March 18, except for a curved portion where the spur joins the main track in the southern part of Block 198.

By mesne conveyances, intervenor, Edgar P. Folse, Inc., acquired all of Block 193 west of the 17-foot right of way granted to the railroad, which included the rice mill property on which a rice mill had been operated for a good many years, and by mesne conveyances also acquired practically all of Block 198 lying west of the 17-foot right of way conveyed to the railroad, and, subject to the railroad's right of way, also acquired the 44-foot strip in that block as well as a triangular plot of ground formed by the angle of the spur track as it leaves the main track and joins the 44-foot strip.

Intervenor, Edgar P. Folse, Inc. (or its authors in title), has been engaged in the conduct of a mill work, lumber, and building supplies business on the property owned by it in Block 198 since 1922, and on the property acquired by it in Block 193

(the rice mill property) since December, 1941. In connection with this business there have been constructed on the 44-foot strip east of the railroad right of way in Block 198 sheds, offices, storerooms, and various other buildings, and intervenor maintains a planing mill in Block 198, situated on this spur track. In the operation of this business, Edgar P. Folse, Inc., has used the spur track continuously, causing shipments to be made, inbound and outbound, over the spur track.

Complainant before the Louisiana Public Service Commission (appellant in this court), Perry J. Burke, is engaged in the business of manufacturing, buying, and selling building materials in New Iberia, and is the owner of practically all of Block 194. On December 8, 1944, Burke also acquired all that portion of Block 193 lying east of the 17-foot right of way granted to the railroad (comprising a part of the 44-foot strip described in the dedication of March 18, 1918), beginning 150 feet from Main Street and extending to Bayou Teche. This strip is adjacent to the property owned by Burke in Block 194, and *abuts the railroad right of way on which the spur track is situated*. The act in which this strip was acquired contains a provision that the parties thereto took cognizance of the fact that the vendee, Burke, was acquiring the strip for the purpose of affording railroad facilities to the tract of land owned by him in Block 194. Since the acquisition of these properties, appellant

Burke has established his business thereon, which he alleges requires the use of the spur track.

Complainant and appellant Burke takes the position that this spur is a public spur track, and that, since he is an abutting property owner, the Public Service Commission should order the railroad to furnish him facilities for the transportation of commodities over the spur track, and, further, should order the railroad to construct, maintain, and operate a switch connection on and across his lands to connect with the spur track.

Intervenor and the defendant railroad take the position that the spur is a private spur, constructed solely for the benefit of the property now owned by Edgar P. Folse, Inc., relying upon the acts and grants made by Scharff, set out hereinabove.

*This spur was constructed by the railroad at its own expense. The railroad is the owner of all the material which went into the spur, including rails, ties, etc., and, since the construction of the spur, has borne the entire cost of its maintenance.*

The owner of the rice mill property was not a party to the grant of the railroad's right of way, and neither he nor Scharff, the grantor and the owner of other abutting property situated in Blocks 193 and 198, had any control, supervision, or authority over the spur track. The railroad had no contract or agreement with the rice mill owner or Scharff by which either of them

was to bear any of the cost of construction or have any control or ownership of the spur track. Scharff had no interest in the strip of land upon which the spur was built, other than the reversionary right, provided in the grant, in favor of him or his heirs or assigns.

In Bedford-Bowling Green Stone Co. et al. v. Oman et al., 115 Ky. 369, 73 S.W. 1038, 1040, the Court of Appeals of Kentucky had before it a case in which one quarry company claimed the exclusive use of a switch leading from the main line of the Louisville & Nashville Railroad Company on the basis of its ownership of the switch, whereas another quarry company claimed the right of service over the switch because of a part interest in it, or in the alternative because the switch was a part of the railroad system and the railroad had no right to deny it service. The ownership of the switch in that case, as in this one, was determined by examining the contracts entered into between the various parties having had an interest in the properties over which it was built. After setting forth the terms of the last contract, the court said:

" * * * This contract, and other evidence in the record bearing upon the question, show that the Louisville & Nashville Railroad Company, during the continuance of this last contract, *has the control and management of the railroad switch. It owns, controls, and operates the engines and other rolling stock which pass over the line. It keeps the roadbed in repair,*[1] *and owns all of the material which goes into it.* So far as this record shows, it exercises the same control and domination over this line that it does over any other part of its system; and we think, by the terms of the contract in question, the switch, during the continuance of the contract, at least, *becomes a part of the general system of the Louisville & Nashville Railroad Company.* This being so, it can not lawfully refuse to receive and transport freight belonging to appellees to and from such reasonable points along the line at which they may lawfully ship or receive it. * * *" (All italics ours.)

In the case of Alabama Cent. R. Co. v. Alabama Public Service Commission et al., 200 Ala. 536, 76 So. 862, 863, L.R.A. 1918C, 193, a common carrier acquired a license or right to operate its trains over the logging road of a sawmill company, but did not own or operate the road, and the sawmill company retained a paramount use of the tracks. Under the contract entered into in that case, the carrier had no right to transport pine lumber over these tracks except for its own use. A shipper applied to the Public Service Commission of Alabama to require the carrier to put in a side track on this logging road to serve it in the transportation of pine lumber and other shipments. The Commission granted such an order, and the railroad applied to the courts of that state for an injunction restraining the enforcement of the order.

The case reached the Supreme Court of Alabama, and that court concluded that the railroad could not be required to render the service desired by the shipper, and in the course of its opinion said:

"* * * If the carrier owner or controlled the logging road under a valid lease, then the Commission could compel it to serve all the public of the same class alike, and to provide facilities reasonably adequate to accommodate shippers desiring service of the carrier. In such cases, where the carrier owns, or, by lease or otherwise, has the control of, the tracks and lines over which it operates its trains, it can be required to serve all customers of the same class on equal terms, and thus avoid discriminations; and the carrier cannot, by contract with some of its customers or with third parties, exempt or excuse itself from thus treating all alike, and thus discharging its duties as common carrier to the public. *But where the carrier does not own or control the track which it uses, but uses the same as a mere licensee, or under an agreement such as is found in this case, the Commission nor the courts cannot authorize, much less compel, the carrier, thus operating under a mere license, to improve or change the main lines, side tracks, or the loading facilities of the line over which it is so operating, without right of control,* but with the mere right to repair and keep up the lines, as in this case.

* * * * * *

"If the logging road in question were a public highway, or a railroad in which the public had acquired rights by condemnation proceedings or by dedication to a public use, and its owners or those who had acquired control of it were common carriers, or were engaged in the business of a public service, then the Public Service Commission or the courts, when authorized by the Legislature, could regulate and control the use of the railroad so as to serve the public, and do so without discrimination. Here, however, the road involved is a private road and not a public one, and those who own, and have the exclusive control of it, are private individuals or corporations, who have merely consented or agreed that appellant, a public service corporation, may use it under certain restrictions and regulations. * * *."

The Supreme Court of Arkansas in Conway Oil & Ice Co. v. Gibson Oil Co., 175 Ark. 905, 1 S.W.2d 60, 62, stated the rule with reference to what constitutes private and public spurs in the following language:

"It will be observed * * * that, where the spur is built for a shipper and the shipper becomes the owner outright, its ownership of that property is like the ownership of any other property. It does not belong to the railroad then, and it is not a part of its system, but, in all cases where the railroad company itself owns the switch or spur and controls it, it is bound to per-

mit the public to use it if such use is needed by the public. * * *"

The appellant has cited the case of Union Lime Co. v. Chicago & Northwestern Railway Co., 233 U.S. 211, 34 S.Ct. 522, 525, 58 L.Ed. 924, in which the Supreme Court of the United States considered a statute authorizing the expropriation of property for the building of a spur track, Although, under the facts, that case is not decisive of the issue here involved, we think the following statement from that decision is pertinent:

" * * * A spur may, at the outset, lead only to a single industry or establishment; it may be constructed to furnish an outlet for the products of a particular plant; its costs may be defrayed by those in special need of its service at the time. But none the less, by virtue of the conditions under which it is provided, the spur may constitute at all times a part of the transportation facilities of the carrier which are operated under the obligations of public service, and are subject to the regulation of public authority. As was said by this court in Hairston v. Danville & W. R. Co., 208 U.S. 598, 608, 28 S.Ct. 331, 52 L. Ed. 637, 641, 13 Ann.Cas. 1008: 'The uses for which the track was desired are not the less public because the motive which dictated its location over this particular land was to reach a private industry, or because the proprietors of that industry contributed in any way to the cost.' There is a clear distinction between spurs which are

owned and operated by a common carrier as a part of its system and under its public obligation and merely private sidings. * * *"

Under the authorities cited hereinabove and under the facts of the case now under consideration, we are of the opinion that the spur in question is a public spur and forms a part of the transportation facilities and system of the railroad, and thus is within the contemplation of Article 13, Section 3, of the Constitution of this state, which provides that all railroads are declared to be public highways.

The Public Service Commission itself, in its order of December 10, 1947, recognized the distinction between public and private spur tracks thus: (1) Public tracks are for the use of the general public, are usually owned outright by the rail carrier, and are generally built upon railroad owned or leased land and not upon land belonging to a private individual. (2) Private industrial spurs are built to serve one particular industry or business, are not open to the use of the general public, are built as a rule upon land owned by the industry, and their construction cost is apportioned between the rail carrier and the industry.

Since this spur is a public spur track, complainant had a right to request service over it in a proceeding before the Public Service Commission, and in the absence of some valid reason he would be entitled as a matter of right to such service, but this right is not absolute in all cases.

A case in which such right was held not to be absolute is that of Louisville & N. R. Co. v. Pittsburg & K. Coal Co., 111 Ky. 960, 64 S.W. 969, 971, 55 L.R.A. 601, 98 Am.St.Rep. 447. In that case a shipper sought a mandatory injunction to compel a railroad to extend service on a railroad switch which had been built from the main line into the City of Newport for the purpose of facilitating the business of various enterprises fronting on Lowell Street. The railroad had refused this service because of a contract which it had made with a coal company, another shipper, from which the railroad had secured a part of the right of way for the switch, and in the contract the railroad had agreed not to ship coal from any other company except the one granting the right of way. The court held that such a contract impaired the obligation of the railroad to the general public and was contrary to public policy in that it gave to one company the exclusive use of the switch, and consequently was null and void. After concluding that the contract was null, and that the plaintiff had a right to service over the switch, the court nevertheless denied to the plaintiff a mandatory injunction, stating:

"But there is another feature presented by this case which remains to be considered. Appellee has no spur or side track from Lowell street into its grounds, and seeks in this proceeding to compel the railroad company to stand the freight cars on their track in the center of Lowell street in front of their property, and to be loaded, and it does not appear that the city has ever authorized such a use of the street. It is manifest that if appellant is required to halt cars on its track in front of appellee's place, and leave them there to be loaded and unloaded, it will materially obstruct the use of the switch track by parties living beyond appellee's yard, and might subject appellant to prosecution by the city for unlawfully obstructing a public street and converting it into a private coal yard. In the absence of express authority from the city of Newport authorizing such use of the street, *and conclusive testimony that it would not be prejudicial to the use of such switch by the appellant's other patrons, we think the court erred in granting the injunction.*"

This brings us to the question of whether the Public Service Commission had the authority under the laws of this state to deny to appellant Burke the service requested, notwithstanding the fact that this is a public spur track, and, if so, whether the Commission's ruling denying such service was unreasonable, arbitrary, and discriminatory.

Article 6, Section 4, of the Constitution of this state provides that the Public Service Commission shall have and exercise all necessary power and authority to supervise, govern, regulate, and control all common carrier railroads, and that *the power and duty of such Commission shall affect*

*and include all matters and things connected with, concerning, and growing out of the service to be given or rendered by common carriers.*

 Under this express grant of power, the Commission had full authority to enter the order of which appellant complains. There thus remains for our consideration the sole question of whether the order was unreasonable, arbitrary, or discriminatory, and, in the absence of any such showing, under the well established jurisprudence of this state it should not be disturbed. Empire Rice Milling Co. et al. v. Railroad Commission of Louisiana, 143 La. 1036, 79 So. 833; Vicksburg, S. & P. Ry. Co. v. Railroad Commission of Louisiana, 153 La. 983, 96 So. 832. See also Lake Charles Ry., Light & Water Co., Inc., v. Reid, Sheriff, etc., et al., 152 La. 476, 93 So. 743; 44 Am.Jur., "Public Administrative Law", sec. 216, p. 641.

The Commission stated in the course of its written reasons for rejecting appellant's demand that:

"To consider the more pragmatic aspects of the question, the Commission has found in its long experience that it is virtually impossible for two industries to be served, in tandem, by one spur; for in order to spot or pull out cars at the farther industry, it is necessary for the switch engine to pull out the cars already spotted at the nearer industry and thus interrupt the loading and unloading operations of the industry nearer the main line. This dis-

turbance not only creates serious difficulties for the industry but is extremely burdensome to the carrier in its switching operations, particularly where the spur branches directly from the main line and there is no intermediate sidetrack.

&ast; &ast; &ast; &ast; &ast; &ast;

" &ast; &ast; &ast; If the complainant's contention should prevail, then any party who happened to own a tract of land contiguous to that of the Standard Oil Company at Baton Rouge, for example, could demand service over the Standard Oil spurs; and should this doctrine spread, the industrial organization of this state would be thrown into unimaginable chaos. The Commission, being mindful of its constitutional duties and responsibilities, cannot and will not voluntarily promulgate any order which would envisage, or contribute to, such catastrophic results. &ast; &ast; &ast; "

The trial judge in refusing to disturb the order of the Commission said in his reasons for judgment:

"The trial on the merits revealed that the plaintiff's business is presently being served by another spur track in which he has an interest and which is operated by the Southern Pacific and Missouri Pacific railroads jointly. Although the plaintiff testified that the service furnished by this spur track is not adequate and that he needs additional railroad spur facilities to enlarge and properly conduct his business, nevertheless, he is able to conduct his business

and apparently is prospering in doing so. Plaintiff also pointed out that if other industries start using this spur, and that there is a likelihood that this may happen, then he would be in a very difficult position to continue operating. However, the Commission found that if the intervenor, Folse, was required to share this spur with the plaintiff, then he would be greatly inconvenienced and the spur track in question would be made practically useless to him. In such cases the Commission must necessarily take all of the factors into consideration and weigh the rights and equities of the parties and exercise their great power judiciously and to the best interest of all concerned."

Appellant Burke does not make any showing that the order of the Commission is unreasonable, arbitrary, or discriminatory, but relies solely on the contention that the spur is a public one and that, as an abutting property owner, he is entitled to service thereon; nor does he make any effort to rebut or contradict the showing of the intervenor, Edgar P. Folse, Inc., that the use of the spur track by Burke would greatly interfere with its business. Under these circumstances we do not think that the judgment of the district court affirming the order entered in this matter by the Public Service Commission should be disturbed.

For the reasons assigned, the judgment appealed from is affirmed; appellant to pay all costs.

O'NIELL, C. J., takes no part.