101 So.2d 699

**PLANTATION ANHYDROUS AMMONIA
CORPORATION**

v.

**ANHYDROUS AMMONIA COMMISSION.**

No. 42713.

March 17, 1958.

Rehearing Denied April 21, 1958.

Porteous & Johnson, William A. Porteous, Jr., Monroe & Lemann, Nicholas Callan, New Orleans, for plaintiff-appellant.

Jack P. F. Gremillion, Atty. Gen., Harry Fuller, Second Asst. Atty. Gen., for defendant-appellee.

SIMON, Justice.

Relator, Plantation Anhydrous Ammonia Corporation, engaged in the business of dispensing anhydrous ammonia from railway tank cars to Louisiana farmers for use as a fertilizer, sought to permanently enjoin the Anhydrous Ammonia Commission of Louisiana from enforcing its resolution prohibiting the dispensing of anhydrous ammonia from railway tank cars into other than bulk storage. Relator's right to continue his system of operation being subject to prohibition by the said regulation he attacked its validity on the ground that it was adopted by members of the Commission who were influenced by self-interest, bias and prejudice, and on the further ground that the regulation was unreasonable, arbitrary and unjustified.

Certain individual farmers intervened in this suit and aligned their complaint with that of the relator. Anhydrous Ammonia Dealers of Louisiana, Inc., a non-profit corporation composed of a majority of bonded retail anhydrous dealers, intervened in the suit and united with the respondent, Anhydrous Ammonia Commission of Louisiana, who in effect generally denied the material allegations of relator's and intervenor's complaint.

The salient issues resulting from the pleadings were: (1) whether alleged self-interest, bias and prejudice of certain named members of the Commission disqualified them from participating in the adoption of said resolution and (2) whether the resolved regulation is unreasonable, arbitrary and unjustified.

The trial judge upheld the validity of the composition of the membership of the Commission finding the members free from the charges interposed by relator as well as the reasonableness of the regulation adopted by the Commission. Relator appealed.

The Anhydrous Ammonia Commission of Louisiana, was created by Act 15 of 1948, Extra Session, now LSA–R.S. 3:1351–1357, wherein the composition of its membership as well as its powers and duties are clearly defined. LSA–R.S. 3:1352 provides that its membership shall be " * * * composed of the Commissioner of Agriculture and Immigration, who shall serve as chairman of the commission, and four additional members, consisting of the director of the experiment station of Louisiana State University and Agricultural and Mechanical College, and three duly qualified electors of the state, to be appointed by the governor, one of whom shall be a farmer and a substantial user of anhydrous ammonia as a fertilizer, and two bonded dealers of anhydrous ammonia as a fertilizer or their authorized representatives." LSA–R.S. 3:-1354 vests the Commission with " * * * the power to establish and enforce * * * such reasonable rules and regulations governing the storage, utilization, sale, or transportation of anhydrous ammonia as a fertilizer, the installation of systems for the storage and utilization of anhydrous ammonia as a fertilizer, and the use and installation of anhydrous ammonia equipment as the commission may deem necessary in the interest of public safety. * * * "

The record discloses that, on June 15, 1953, in the exercise of the duty and power granted by the foregoing statutes the Commission adopted the following rule governing the storage and dispensing of anhydrous ammonia: "In the interest of public safety, the dispensing of anhydrous ammonia from railway tank cars into other than bulk storage is prohibited, effective January 1, 1954."

The day the resolution was adopted, June 15, 1953, the official membership of the Commission was composed of (a) Dave L. Pearce, Commissioner of Agriculture and Immigration, Chairman, (b) W. G. Taggart, Director of the Experiment Station of Louisiana State University and (c) three appointees of the Governor, namely, Eugene H. Graugnard, appointed in conformity with the statute as a farmer and a substantial user of anhydrous ammonia as a fertilizer, and Louis Windham and Nelson Abell, appointed in conformity with the statute as authorized representatives of bonded dealers of anhydrous ammonia as a fertilizer.

In the lower court relator contended that Commissioner Graugnard was, at the time of his appointment and at the time of his vote favoring the resolution, a member of and was financially interested in Louisiana Agricultural Cooperative, Inc., a bonded dealer in anhydrous ammonia and was therefore disqualified to serve in his appointive capacity as a farmer and substantial user of anhydrous ammonia as a fertilizer. However, on appeal this complaint is abandoned and appellant concedes that

Commissioner Graugnard was fully qualified to vote on said resolution as a farmer and user of anhydrous ammonia as a fertilizer.

Thus, the validity of appellant's charge of bias is confined to the official conduct of Messrs. Abell and Windham.

Appellant contends that Messrs. Abell and Windham, though bonded dealers and therefore qualified to sit on the Commission by express statutory authority, should have been disqualified from participating in the fabrication and adoption of the resolution for the reason that both were owners or representatives of competitive bulk station operators and therefore influenced by prejudice and self-interest in their vote therefor. This alleged bias and self-interest is predicated on the fact that bulk station operators with bulk installations representing substantial investments, maintenance and overhead costs, have an economical interest adverse to a distribution system which requires only the availability of a railroad tank car and the use of a spur track.

The record discloses that Mr. Abell operates out of Monroe, Louisiana, as a bonded dealer, and has two locations south of Alexandria, one at Englewood in Rapides Parish and the other at Rosa, a small community located between Bunkie and Lebeau. Whereas, in Louisiana appellant operates out of the Baton Rouge area.

Thus it is obvious that the features of commercial competition between appellant and Mr. Abell are nonexistent. The single instance of commercial competition as between them is shown by the record to be when Mr. Abell, along with other dealers throughout the State, submitted a bid to the Louisiana State Penitentiary for the sale of anhydrous ammonia fertilizer. The record does not disclose that either appellant or Mr. Abell was the successful bidder.

Commissioner Windham's business operations are conducted out of Baton Rouge. Appellant does not serve the same territory. There is a minor degree of overlapping of territories so as to make appellant and Windham competitive dealers, which unquestionably should redound to the health of commerce. To say that this limited competition has the effect per se of creating bias, prejudice or self-interest on the part of Mr. Windham's official conduct would be equally chargeable as to all bonded dealers throughout the State and thus render inoperative the purposes and objects of the statute.

It appears that prior to the adoption of the resolution the Commission conducted exhaustive inquiries on the public safety features of dispensing anhydrous ammonia from railway cars; that when the resolution was offered Commissioners Abell, Windham and Graugnard voted in the affirmative and Dr. Taggart voted in the neg-

ative. The chairman of the Commission was recorded in the minutes of the meeting as not having voted.

◼ The language of the statute leaves no doubt that in its enactment the Legislature was concerned primarily with public safety in the handling and distribution of this dangerously explosive product. The competitive aspect of the two systems of distribution is immaterial and is obviously not the motivating purpose of the statute. The requirement that one of the commissioners should be a farmer and a substantial user of anhydrous ammonia as a fertilizer clearly indicates legislative intent that. farmers as a class should have representation in the administration of the statute by the Commission.

Likewise, the provision that two members of the Commission be bonded dealers reveals the legislative intent that said dealers should have representation. We are not unmindful of the fact that three of the five required members are persons having active interests in the product, its sale and use, as well as possessing personal knowledge of its inherent qualities, both dangerous and beneficial. The Legislature could not have intended that such representation could be urged to disqualify members from participating in the administration of the underlying purposes of the statute.

To support its attack on the validity of the resolution for alleged self-interest on the part of the voting commissioners, appellant relies on decisions of other states dealing with the disqualification of administrative and public officers because of their bias, prejudice or self-interest while acting in their official capacities. We find the conclusions reached in these cases are here inapplicable.

◼ We find in the instant case that, though the two named commissioners herein are bonded dealers engaged in the business of dispensing anhydrous ammonia in a manner different from that employed by appellant, there is no probative evidence to establish that either of the commissioners was prejudicially influenced in this action. The testimony of the various witnesses as to the attributes of this lethal product, the hazards attending its distribution, the susceptibility of regulation of distribution from bulk storage to consumers convinces us that the knowledge and experience of the members of the Commission brought to bear on the regulations in the dispensing of this dangerous substance served to accomplish the end intended by the Legislature, that is, a regulation thereof in the interest of public safety.

It is significant that relator does not attack the constitutionality or legality of LSA–R.S. 3:1351–1357 nor does he deny the right of the Commission to regulate the dispensing of anhydrous ammonia. He presents however a second primary issue

contending that the resolution resulting in a prohibition of its distribution from railroad tank cars is an unreasonable and unjustified regulation. Appellant further contends that this prohibited system of distribution is capable of regulation equally effective in the light of public safety as that of distribution from bulk storage and that, therefore, there exists no reasonable necessity for the prohibition herein imposed by the Commission.

The record discloses the fundamental facts that anhydrous ammonia is a compound formed by the combination of two gaseous elements, nitrogen and hydrogen, in the proportion of one part of nitrogen to three parts of hydrogen by volume. Developments of recent years have produced many new applications for anhydrous ammonia in addition to its traditional use as an economical and efficient refrigerant. Its most extensive use now, from the standpoint of volume, is in soil fertilization, dispensed to farmers from either stationary bulk stations or from mobile railroad tank cars. Both methods of distribution are susceptible to regulations; it follows that either method is susceptible to prohibition.

When this product is dispensed from a railroad tank car the same is spotted on a leased or privately owned spur track from which the farmer's nurse tanks are filled by the farmer or his employees. This operation usually results in only a partial unloading of the contents of the railroad tank car. Obviously, where ammonia is dispensed from tank cars spotted from time to time on railroad spur tracks the partial unloading by farmers and other unskilled persons is less susceptible to adequate supervision and inspection of equipment and procedures employed in the process.

Whereas it is readily conceivable that when the ammonia is dispensed from established bulk storage plants the loading and unloading operations can be subjected to stringent regulations not only with respect to the handling of anhydrous ammonia by sufficiently trained personnel, but with respect to every phase of its distribution.

Under LSA–R.S. 3:1354 the Commission is not only charged with the mandatory duty to adopt such rules and regulations as it deems necessary in the interest of public safety, but this statute also provides that: "All rules and regulations promulgated by the commission may be subject to review by the nineteenth judicial district court."

Upon review by this Court the trial judge in his reasons said:

"We now come to the last complaint, that the regulation is arbitrary and discriminatory and an abuse of the Commission's discretion.

"No principle of law is better settled than that Courts do not have the right or authority to arbitrarily substitute their own judgment for that of an administrative agency of the government. In order to do so it must clearly appear that there has been an abuse of the discretion vested in such boards by the law.

"Here, the obvious purpose of the regulation attacked is in the interest of public safety.

"It will be conceded that on trial hereof there was abundant testimony to the effect that the distribution and dispensing of anhydrous ammonia from tank cars was as safe if not safer than the bulk storage method. On the other hand there was an equal amount of evidence to the effect that the bulk storage method is the safer method

"In these circumstances where the evidence is about equal, can the Court usurp the functions of the Commission and decide the question and hold that the Commission acted arbitrarily? I think not.

"The regulation attacked in my opinion is a valid exercise of the police power.

" 'The court does not substitute its judgment upon a question of policy for that of the governing body of the city, but denies effect to the ordinance only where its unreasonableness is so manifest as to show bad faith or such arbitrary conduct as to amount to practically the same thing.' See 19 R.C.L. 807–810.

" 'The right of engaging in a lawful business or occupation is subject to regulation under the police power, and it is no objection to the exercise of such power that a profitable business incidentally is impaired or destroyed.' See American Jurisprudence, Par. 268, P. 1009."

Although courts will not arbitrarily substitute their judgment for that of constituted administrative agencies charged with a determination of the facts, nor will this Court disturb the findings of fact by a trial court, save for manifest error, which we do not find in the instant case, we have nevertheless as above indicated reviewed the evidence from which the resolution of the Commission finds its source, bearing in mind, of course, that the rulings of the Commission, like those of other administrative bodies acting under a delegation of discretionary authority, are entitled to great weight and will not be disturbed in the absence of a clear showing of abuse of power. Burke v. Louisiana Public Service Commission, 215 La. 451, 40 So.2d 916 and cases cited there; and Gulf States Utilities Co. v. Louisiana Public Service Commission, 222 La. 132, 62 So.2d 250.

In view of the inherent characteristics of anhydrous ammonia we are convinced

not only with the obvious necessity of regulatory measures covering this product but that the subject resolution adopted by the Commission is reasonable.

Accordingly, for the reasons assigned, the judgment of the trial court is affirmed.