PONDER, Justice.
In this suit Magnolia Park, Incorporated, seeks mandamus to order the Louisiana State Racing Commission to nullify its action issuing a racing permit to Kenner Racing Association, and to order it to issue a 'license or permit to relator. After hearing, the lower court nullified the permit granted to Kenner Racing Association, considered the alternative application filed by Magnolia Park, Inc. on August 28, 1956, and held that this alternative application should have been granted by the Louisiana State Racing Commission. Accordingly, the lower court made the writ of mandamus peremptory commanding the Commission *723 'to issue a' permit to Magnolia Park, Inc. ■for 39 racing days of flat thoroughbred day racing commencing March 19, 1957. From this judgment, the Louisiana State Racing Commission and Kenner Racing Association, Inc. have appealed to this Court. Magnolia Park, Inc. answered the appeal asking that it be granted a license for 39 nights, beginning September 21, 1956 through November 17, 1956, and 42 nights, beginning March 19, 1957 through May 11, 1957, and in the alternative for all the dates originally prayed for in the original application to conduct flat day racing.
Prior to August 15, 1956, Magnolia Park, Inc., hereinafter referred to as Magnolia, 'made application to- the Louisiana State Racing Commission, hereinafter referred to as the Commission, for a license to conduct flat thoroughbred night racing for 39 .nights,- beginning September .21, 1956 through ’November 17, 1956, and for 42 nights, beginning March 19, 1957 through -May 11, 1957, inclusive. On August 15, 1956, Kenner Racing Association, hereinafter referred to as Kenner, made application to the Commission for flat thoroughbred night racing, beginning March 11, 1957 through May 11, 1957. The Commission met on August 23, 1956 to consider the foregoing applications together with the application filed by Fair Grounds Corporation. All of these .applications were in order and contained the required deposit, •documents and statistical data required by LSA-R.S. 4:141 et seq.. The.application of Fair-Grounds Corporation was for 83 days of flat thoroughbred day racing on dates not conflicting with the other two applications and this application is in no way involved in the present litigation and, therefore, will not be discussed herein.
On August 28, 195.6, Magnolia. filed an amended and alternative application asking for-flat day racing on the same dates originally prayed for in the first application for night flat racing. On August 29, 1956 the Commission rejected the application of Magnolia and issued a permit to Kenner for flat night racing from March 15 to May 11, 1957. Magnolia asked for a consideration of the amendment to its original application asking for flat day racing on the same dates and this request was refused by the Commission on' the ground that it could not be considered due to the fact that the application should have been filed not later than August 15, 1956 under the law.
Thereupon Magnolia brought the present suit seeking to compel the Commission to grant it a license or permit to conduct both night and day racing as prayed for, and to nullify its order granting Kenner a license or permit to conduct night racing. After hearing, the lower court held that Rule No. 22K of the Commission prohibited it from granting permits to conduct night racing on the flat -and nullified, the . permit granted to Kenner., It further held that the alternative, .application of Magnolia filed .on *725 August 28, 1956 should have been considered and granted a permit to Magnolia for flat day racing as prayed for in the amended application for thirty-nine days commencing March 19, 1957.
In this appeal the Commission and Kenner ask this Court to reinstate the order of the Commission. Magnolia has answered the appeal asking that it be granted a license to conduct flat racing for 39 nights in the fall (obviously the demand for fall racing dates, September 21, 1956 through November 17, 1956 is now moot since those dates lapsed prior to the writing of this opinion) and 42 nights in the spring, as heretofore pointed out, ■ and in the alternative for a license to conduct flat day racing on the dates asked for in the original application.
Kenner contends that the order of the Commission should be reinstated. The Commission contends that it acted within its discretion and its order should be reinstated. On the other hand, Magnolia contends that it was mandatory for the Commission to issue it a license on the showing made and that the Commission abused its discretion. Magnolia further contends that the Commission was in error in refusing to grant it a permit because of its management and financial condition and that its refusal was, therefore, arbitrary and an abuse of the discretion granted by law.
We find from the record that Magnolia had previously conducted two harness race meetings at night at a great financial loss. Magnolia’s financial statement for the fiscal years ending June 30, 1955 and June 30, 1956 show a net loss for the two years of $1,311,541.30. It appears that if Magnolia was granted a permit to conduct flat racing that it would be operated by the same management. Magnolia’s statement of assets and liabilities shows that it has no working capital but on the contrary has ,a nega-’ tive working capital of approximately $104,000. Kenner, according to its financial statement, has a working capital of approximately $50,000 with no outstanding obligations.
While the balance sheet- of Magnolia shows a capital surplus of $16,836.39 and a net worth of $349,562.19, these figures are based on $440,557.05 worth of “Deferred charges and other assets.” Of this latter figure, which apparently represents money already spent towards the going value of the concern (good will, pre-paid expenses, etc.), only $12,000 is realizable as an asset. Therefore, it' is seen that, if Magnolia was to liquidate, it would have no net worth whatsoever.
Realizing that its financial condition was extremely precarious, and admitting that the conversion of its track to flat racing would entail expenses from $57,000 to $99,000, Magnolia attached to its original application a letter dated August 14, 1956 addressed to the Commission from Sport-service Corporation and signed by Mr. *727 Louis Jacobs, President, in which letter it is stated that upon certain conditions (four in number) Sportservice “hereby commits itself to loan or cause to be loaned such operational funds as may be required for the conducting of such meets, said loan to be in an amount not to exceed Two Hundred and Fifty Thousand ($250,000.00) Dollars in the aggregate.” This loan was conditioned upon the following:
“1. Delivery to us of proper certification by your Honorable Commission that said application for a license for the conduct of said meets and racing dates therefor have been duly and effectively granted by you.
“2. Performance and/or the commencement of performance of the formulated plans of Magnolia Park, Inc., (as presented to you in or with said application), for the conduct of such meets, without hindrance, under and pursuant to such license.
“3. Receipt by us of proper covering promissory note or notes and other instruments in form similar to those commonly used by us in connection with such loans.
“4. Termination of this commitment and any and all of our obligations hereunder in the event said application lapses or is denied by your Honorable Commission.”
Mr. Louis Jacobs, President of Sport-service of Buffalo, New York, and author of the letter presented by Magnolia did not appear before the Commission and there was no resolution of the corporation authorizing the conditional loan filed in this case. Mr. McQuaid, an officer of New Orleans Sportservice, testified that he was not an officer of the Sportservice Corporation of Buffalo, New York, and had no knowledge of any resolution being passed by the board of that corporation authorizing the conditional loan and admitted that he did not know whether Mr. Jacobs had a right, under the charter of that corporation, to grant a loan.
Mr. Sere, a certified public accountant, testified that whether or not the conditional loan would help the financial situation of Magnolia depended on the term of the loan and the rate of interest charged. The letter from Mr. Jacobs is silent on this point.
In stressing its claim that the Commission’s action was arbitrary, Magnolia points to the fact that it owns a plant which can be easily converted to fiat racing uses while Kenner is not experienced in the racing business and will be required to erect a clubhouse and grandstand in order to operate under the permit.
The fact that Magnolia is a going concern was doubtless given consideration by the Commission and perhaps if every *729 thing else had been equal it might have rendered a different decision. However, the law does not require one seeking a -racing permit to own a track or have one under lease at the time application is made but only that the applicant contemplates constructing a suitable plant in case the permit is granted. LSA-R.S. 4:147(4) (d). Considering all circumstances, the Commission evidently felt that Kenner would be more successful in the operation of a racing venture than Magnolia. In view of the past performance of Magnolia, we cannot say that the Commission’s action in the matter was error.
The Racing Commission is composed of nine members and there is nothing in this record to show that any of them were prompted in their action by any ulterior motive. Nor is there anything in this record to indicate that they did not act in accordance with what they thought was the best interest of the public. Where a discretion is vested in an administrative board, courts cannot substitute their judgment for that of an administrative body.
The Commission herein was faced with two applications for racing and had to make a choice because under LSArR.S. 4:147(1) the operation of more than one race track on the same date within a 100 mile area is prohibited. Obviously, it became the duty of the Commission to determine which one of the two applications should be granted and which one should be refused. Under the provisions of LSA-R.S. 4:152, the Commission was specifically given the right to decide this purely administrative matter. This Court in the case of Gulf States Utilities Co. v. Louisiana Public Service Commission, 222 La. 132, 62 So.2d 250, 252 has held “that the rulings of the Commission, like those of other administrative bodies acting under a delegation of discretionary authority, are entitled to great weight and will not be disturbed in the absence of a clear showing of abuse of power.” To the same effect are the cases of Illinois Central R. Co. v. Louisiana Public Service Commission, 224 La. 279, 69 So.2d 43; Interstate Oil Pipe Line Co. v. Guilbeau, 217 La. 160, 46 So.2d 113; Burke v. Louisiana Public Service Commission, 215 La. 451, 40 So.2d 916; Vicksburg, S. & P. Ry. Co. v. Railroad Commission of Louisiana, 153 La. 983, 96 So. 832; Empire Rice Milling Co. v. Railroad Commission of Louisiana, 143 La. 1036, 79 So. 833.
The relator relies heavily upon the case of Cloverleaf Kennel Club Racing Commission, 130 Colo. 505, 277 P.2d 226 but the ruling in that case could not possibly apply to the present situation because as pointed out heretofore the Commission was without power to grant the application to both applicants under LSA-R.S. 4:147(1).
Having concluded that the Commission did not abuse the discretion granted it by law in denying Magnolia a *731 license for the spring season of 1957, it is unnecessary to determine whether it should have considered Magnolia’s so-called amended application of August 28, 1956 for day racing inasmuch as the Commission 'wa9 powerless to grant more than one license for racing to be operated within a 100 mile area on the same dates. It remains to be determined whether the Commission acted properly in granting a license to Kenner for flat night racing.
Under LSA-R.S. 4:147(6) the Commission is authorized to make rules and regulations for the holding, conducting, and operating of all • race tracks, race meets, and races held in Louisiana, and in accordance therewith Rule 22K was adopted providing for flat or thoroughbred- racing in the day and harness, standardbred, or trotting racing at night. There is nothing in LSA-R.S. 4:147(6) to prevent the Commission from changing its rules either specifically or by implication. Hence, when the Commission took action contrary to the rule, it simply rendered the rule, which could have been repealed at any time, no longer operative.
For the reasons assigned, the judgment of the lower court is reversed and set aside. The alternative writ of mandamus is recalled. There is now judgment reinstating the orders of the Louisiana Racing Commission refusing the application of Magnolia Park, Incorporated and granting a license or permit to Kenner Racing Association for flat thoroughbred night racing beginning March 15, 1957 through May 11, 1957. All costs to be paid by the relator, Magnolia Park, Incorporated.
HAWTHORNE, J., concurs with written reasons.
HAMITER, J., concurs in part and dissents in part.
FOURNET, C. J., and MARTINEZ, J. ad hoc, dissent with written reasons.