BLANCHE, Judge.
Plaintiffs-appellees are residents and taxpayers of the City of Baton Rouge and engaged in the operation, ownership and maintenance of eating and drinking establishments such as hotels, motels or restaurants in the City of Baton Rouge. At issue is the right of the defendant-appellant, City of Baton Rouge, to pick up garbage from these establishments on a twice weekly basis rather than on a daily basis. Prior to the adoption of Ordinance 2316, the City of Baton Rouge had picked up garbage from the aforesaid commercial establishments on a daily basis. After the effective date of the ordinance, the Director of Public Works ordered that garbage pickup from the said establishments be on a twice weekly basis. Plaintiff originally attacked the validity of Ordinance 2316 and sought to enjoin its enforcement in a suit by ordinary process. After the action of the Director, however, the plaintiffs filed a rule for a preliminary injunction to prevent him from picking up the garbage except on a daily basis until a final determination was made by the court on the merits of the case as to the validity of said ordinance.
The pertinent provision of Ordinance 2316 which amended Title 6 of Section 413(b) of the Baton Rouge City Code concerning the pickup of garbage is as follows:
“(b) Until otherwise directed by the city counál, the Director of Public Works is hereby authorized to establish appropriate routes and schedules providing for the pickup of garbage within the residential areas of the city on the basis of not more than two pickups per week. Garbage pickup from commercial establishments by collectors shall be at least twice a week or more frequently, taking into consideration proper sanitation of the commercial areas and the protection of the public health. Trash collection in *50 the residential areas shall be on the basis of one day a week, in accordance with schedules and routes to be established by the Director of Public Works. Routes and schedules for the pickup of garbage and trash by the city, as herein authorized, shall be established by the Director of Public Works, who shall give appropriate public notice thereof in order that all persons affected may be fully informed concerning the routes and schedules so established. Collection from commercial establishments by private collectors shall be on the basis which is mutually agreeable to the commercial establishment and the collector; however, the collection must be of such frequency to maintain proper sanitation and protect the public health.” (Joint Exhibit-C, Filed in Evidence August 18, 1969)
After a hearing on the rule, the trial judge issued a preliminary injunction which ordered the City of Baton Rouge to maintain the status quo with reference to garbage collections until such time as the matter should be determined on its merits. The trial court in its Reasons for Judgment stated:
“This court will not be so presump-tious as to impose its opinion on the City as to how often garbage should be picked up. This is a discretionary matter left to administrative experts in the field of sanitation and health.
“Inasmuch as the constitutionality of the ordinance is under attack the court does feel, however, that the ends of justice and equity would best be served by maintaining the status quo until such time as this suit can be tried on its merits. By so doing commercial establishments that can not afford private haulers will not incur potential liability for violation of the health ordinances until after this matter has finally been decided.” (Reasons for Judgment, Record, p. 34)
We reverse.
Reference to the above-quoted provision of Ordinance 2316 clearly shows that the Director of Public Works of the City of Baton Rouge was authorized to establish appropriate routes and schedules providing for the pickup of the garbage and trash in the City of Baton Rouge. Regarding the pickups from commercial establishments, he was required to make pickups twice a week or more frequently, taking into consideration proper sanitation of the commercial areas and the protection of the public health. The Director had, in fact, complied with the ordinance and would not have been required to pick up garbage more frequently except in the exercise of his discretion to protect public health. Where discretion is vested in an administrative officer by law, the court cannot substitute its judgment therefor in the absence of an arbitrary, capricious or gross abuse of discretion. State ex rel. Magnolia Park, Inc. v. Louisiana State Racing Commission, 231 La. 720, 92 So.2d 699 (1956); Peshoff v. Firemen’s Pension & Relief Fund, 167 So.2d 197 (La.App. 3rd Cir. 1964); Nassau Realty Company v. City of New Orleans, 221 So.2d 327 (La. App. 4th Cir. 1969).
Plaintiff failed to carry the burden of proving that any health hazard was created by the Director’s refusal to pick up garbage on a daily basis. On the other hand, appellant produced the testimony of Dr. J. T. Perrett, Director of the Louisiana State Department of Health, City-Parish Health Department, an expert in the field of sanitation and health, who testified that no health or sanitation hazard was posed by the action of the Director. He testified that the only difference between collecting garbage from commercial establishments and that from residential homes was in the amount and that there would be no hazard if the garbage was placed in the proper containers as prescribed by the City and properly cleaned. For the same reason plaintiffs would escape criminal responsibility if they obtained the proper number *51 and type of garbage containers and properly maintained them. The only injury plaintiff could show is that the action of the Director might cause them to purchase additional garbage containers or incur additional expense from private haulers, all of which could be compensated adequately in damages. Mr. Burgess testified that he would not have reduced the garbage collection at commercial establishments if a health hazard had been created thereby. The testimony of appellant’s experts was not rebutted.
A prerequisite for the issuance of a temporary restraining order and thereafter a preliminary and finally a permanent injunction is a showing that irreparable injury will occur unless a temporary restraining order and a preliminary injunction are issued. LSA-C.C.P. art. 3601, Waters v. Karst, 235 So.2d 222 (La.App. 3rd Cir. 1970).
As we stated in Melancon v. Assumption Parish Police Jury, 231 So.2d 690 (La.App. 1st Cir. 1970):
“A preliminary injunction is interlocutory in nature, designed to preserve the status quo until a determination can be made on the merits of the controversy. It may issue on a prima facie showing by the plaintiff that he is entitled to the relief sought, and that he would suffer irreparable injury if it is not granted. Ridge Park v. Police Jury of Jefferson Parish, 210 La. 351, 27 So.2d 128 (1946); Cloud v. Dyess, 172 So.2d 528 (La.App. 3 Cir. 1965).
“ ‘An irreparable injury is one for which the party injured cannot be compensated adequately in damages, or for which the damages cannot be measured by a pecuniary standard.’ City of Lake Charles v. Lake Charles Ry., Light & Waterworks Co., 144 La. 217, 80 So. 260 (1918).” (Melancon v. Assumption Parish Police Jury, 231 So.2d 690,691)
We further stated in Melancon that the trial judge has broad discretion in determining whether to grant or refuse a preliminary injunction, citing Silberman v. Beaubouef, 175 So,2d 873 (La.App. 3rd Cir. 1965). However, plaintiffs did not even make a prima facie showing that they were entitled to the relief sought, as the evidence is totally lacking to show that plaintiffs will suffer irreparable harm and injury.
For all these reasons we are of the opinion that the trial judge abused his discretion in granting plaintiff a preliminary injunction, and the judgment of the trial court is reversed, this matter being remanded for trial on the merits. The costs of this appeal are to be borne by plaintiffs-appellees, all other costs to await a final determination on the merits.
Reversed and rendered.