365 So.2d 891 (1978)
STATE ex rel. MAPLE AREA RESIDENTS, INC.
v.
BOARD OF ZONING ADJUSTMENTS, and Jack R. Cahall.
No. 9586.
Court of Appeal of Louisiana, Fourth Circuit.
December 7, 1978.
*892 McCloskey, Dennery, Page & Hennesy, Edward J. McCloskey, New Orleans, for plaintiff-appellant.
Donald A. Hoffman, City Atty., Joseph E. Berrigan, Jr., Asst. City Atty., for defendant-appellee, Bd. of Zoning Adjustments.
Gertler & Gertler, James H. Looney and M. H. Gertler, New Orleans, for defendantappellee, Jack R. Cahall.
Before SAMUEL, LEMMON and GARRISON, JJ.
SAMUEL, Judge.
Plaintiff, Maple Area Residents, Inc., sought reversal in the district court of a decision of the Board of Zoning Adjustments of the City of New Orleans granting Jack R. Cahall a variance from one of the requirements of the Comprehensive Zoning Ordinance for the City of New Orleans[1] to permit him to convert a two-family residence to four offices at 7840 Maple Street. The property has insufficient off-street parking to meet the zoning requirements for offices.
After submission on stipulations, the trial judge rendered judgment upholding the Board's decision giving as reason therefor his inability to conclude the Board acted arbitrarily, capriciously, or in violation of the discretion afforded it. Plaintiff has appealed from that judgment.
Plaintiff is an incorporated neighborhood improvement association, the avowed purpose of which is the protection of the neighborhood and promotion of strict enforcement of zoning laws designed to protect the neighborhood.
Defendant[2] obtained the property on January 30, 1975, at which time it was a residential duplex. By September, 1975 he completed the conversion, and during that month he rented three of the office units to a real estate firm, an art gallery and an engineering firm. On July 28, 1975 Cahall also purchased property at 729-31 Fern Street, contiguous to the Maple Street property at its rear property line.
After urging by neighborhood residents, the Department of Safety and Permits of the City of New Orleans inspected the Maple Street premises on December 5, 1975. The inspection determined Cahall did not *893 have the necessary use and occupancy certificate and the premises did not have offstreet parking spaces required by the zoning law.
The Department notified Cahall of the variations on December 8, 1975, and on December 17 he applied to the Board for a variance reducing the number of required spaces from four to two in connection with "proposed conversion residence into three offices and one residence." The variance request was denied on January 9, 1976 by the chief building inspector for the Department of Safety and Permits because compliance with off-street parking requirements necessitated waiver of more than two offstreet parking spaces.
Cahall's application for a variance was subsequently altered to request a waiver of six of the required twelve parking spaces and to allow parking in the front yard required by the zoning ordinance. Notice of public hearing was given by the Board on September 9, 1976 and a public hearing was held on September 16, at which time various neighborhood residents presented vigorous opposition to the variance. On October 6, 1976 the Board published its decision to permit conversion of the property and to permit stacked parking. However, the Board denied Cahall the right to park in the front yard area and made its approval contingent on Cahall's submitting to the Board a letter outlining a parking procedure which would be sufficient to make practical use of a paved area adjacent to the property for stacked parking.
Plaintiff argues the variance allowed by the Board was not within its discretion for numerous technical reasons. However, its primary argument is that the Board acted on the variance in favor of Cahall solely to protect his economic interest in the property. They argue that if he undertook the conversion without obtaining proper permits and variances in advance, mere financial hardship caused by his own failure to obtain necessary approval is not sufficient justification under the zoning ordinance to grant a variance.
The technical arguments by plaintiff are not persuasive and need no extensive discussion. For example, plaintiff argues the Board's decision is invalid for failure to comply with its own procedural requirements in that it did not conduct a hearing on the application for a variance within 45 days of receipt of the application.[3] It is obvious this provision benefits Cahall and not the surrounding neighbors. Cahall makes no argument regarding this technical variation from the Board's procedure, and the issue is therefore moot.
The evidence reveals the building converted by Cahall was in existence in 1970 when the Comprehensive Zoning Ordinance took effect. The lot on which it is constructed forms the corner of Maple and Fern Streets and measures 90' front on Maple and 40' front on Fern. The property is zoned B-1, Neighborhood Business District. Offices are a permitted use in a B-1 zoning district.
This court previously has held a trial court must afford a presumption of regularity to the decisions of the Board of Zoning Adjustments. While this presumption is rebuttable, a reviewing court cannot simply substitute its own judgment for that of the zoning board or other properly constituted administrative agency. A reviewing court must first determine whether the decision of the Board is supported by substantial and competent evidence.[4] This court will not substitute its judgment for that of administrative tribunals in the absence of a showing by the complaining party that the administrative tribunal was arbitrary and capricious or that it abused its discretion.[5]
The record before us indicates plaintiff purchased a large building on a comparatively small lot. This type construction *894 was characteristic of buildings in New Orleans, particularly prior to the enactment of the Comprehensive Zoning Ordinance. The right of ownership carries with it the right of use, and it seems axiomatic that a property zoned for offices should be so used in the absence of extraordinary circumstances making the use particularly dangerous or inconvenient to the local community.
By definition, a variance is a method of granting an exception to a general rule which, if applied literally and strictly, would deny an owner the beneficial use of his property. A variance is a method of alleviating a hardship caused a property owner by the superimposition of a zoning ordinance subsequent to the construction of a building which makes the actual position or construction inconsistent with the zoning uses and requirements thereby allowed. This court has stated previously that each zoning case must be decided on the facts peculiar to it, and no general rule can be formulated as to what constitutes hardship or unusual and practical difficulties sufficient to authorize grant of a variance. No single factor is determinative, and all relevant factors must be considered.[6] Moreover, while economic hardship on the property owner cannot be the only factor to be considered, it nevertheless can be one of the factors considered.[7]
The record before us shows the Board considered smallness of the lot and its B-1 zoning when it arrived at its determination to waive or reduce off-street parking requirements. Our analysis indicates it would be, for all practical purposes, impossible to provide off-street parking conforming to the zoning ordinance for any commercial use for which the property in suit is zoned. Aside from economic considerations, the physical facts establish a "peculiar and exceptional practical hardship"[8] in addition to the owner's economic hardship resulting in his premature conversion of the property without permits and variances.
Considering the Board's recitation, the existence of all standards for granting a variance provided by the Comprehensive Zoning Ordinance[9] and the entire record of the proceeding, we conclude the granting of the variance is supported by substantial and competent evidence and the Board did not act arbitrarily, capriciously or in abuse of the discretion afforded it by the Comprehensive Zoning Ordinance. Given this finding, we cannot substitute our judgment for that of the Board and must recognize the presumption of regularity of the Board's decisions.[10]
For the reasons assigned, the judgment appealed from is affirmed.
AFFIRMED.
LEMMON, J., concurs with written reasons.
LEMMON, Judge, concurs and assigns reasons.
The purpose of a variance is to provide relief from the literal terms of a zoning ordinance which, if strictly applied, would deny a property owner all beneficial use of his land and thereby amount to confiscation. 2 Anderson, American Law of Zoning § 14.02 (1968). Article 15, Section 2.3, Subsection 1 of the Comprehensive Zoning Ordinance provides nine standards to be applied in authorizing a variance, and the Board cannot grant a variance unless all nine standards are met. In this case plaintiff contends four standards were not met.
1. Subsection 1 a:
"Special conditions and circumstances exist which are peculiar to the land, structure, or building involved and which are *895 not applicable to other lands, structures, or buildings in the same zoning district."
The smallness of the lot and the largeness of the two existing buildings (one was torn down to provide an area for parking) which virtually covered the entire lot constitute special conditions and meet this standard.
2. Subsection 1 c:
"The special conditions and circumstances do not result from the actions of the applicant or any other person who may have or had interest in the property."
The special conditions and circumstances existed at the time the applicant purchased the property. Whether or not he remodeled the property, he could not have used it for commercial purposes (the use to which it had been rezoned in 1970) without obtaining a variance, and it is therefore immaterial in reviewing the grant of the variance that he did expend a large sum of money in remodeling for commercial use.[1]
3. Subsection 1 g:
"The purpose of the Variance is not based exclusively upon a desire to serve the convenience or profit of the property owner or other interested party(s)."
Here, the purpose of the variance was to avoid a harsh situation resulting from special conditions and circumstances which existed when the applicant purchased the property. The rezoning of the area into a commercial district eliminated or substantially lessened the possibility of beneficial use of the property as a multifamily dwelling, while on the other hand the property could not be used for commercial purposes unless the variance was granted. Thus the applicant was faced with owning property which had no beneficial use.
4. Subsection 1 i:
"The proposed Variance will not impair an adequate supply of light and air to adjacent property, or increase substantially the congestion in the public streets, or increase the danger of fire, or endanger the public safety."
This is the toughest standard to justify, especially since proof of a negative is required. The streets in the area were already congested because of insufficient offstreet parking. However, this situation had apparently resulted from the 1970 rezoning of the area to commercial uses.
The standard under discussion involves considerations of substantial detriment to the public good. Since the determination of congestion is different in commercial areas than in residential areas, and since the standard requires a substantial increase in congestion in an area which is now zoned for neighborhood business use, I cannot say that the Board abused its discretion by finding this standard had been met.
NOTES
[1] Ordinance 4264 M.C.S., effective August 1, 1970. To permit him to convert a two-family residence to four offices at 7849 Maple Street, with insufficient off-street parking.
[2] Cahall sold the property to another person while this proceeding was pending. However, because the subsequent purchaser had nothing to do with the facts involved in the appeal, the defendant will be referred to as Cahall.
[3] Article 15, Section 2.3, Subsection 5, Comprehensive Zoning Ordinance.
[4] Gertler v. City of New Orleans, La.App., 346 So.2d 228.
[5] Nassau Realty Company v. City of New Orleans, La.App., 221 So.2d 327. See also Chism v. City of Baton Rouge, La.App., 244 So.2d 48.
[6] State v. Board of Zon. Adjust, of City of New Orleans, La.App., 197 So.2d 916.
[7] Times Picayune Pub. Corp. v. City of New Orleans, La.App., 316 So.2d 147.
[8] Article 13, § 11, ¶1, Comprehensive Zoning Ordinance.
[9] Article 15, § 223, Subsection 1.
[10] See Gertler v. City of New Orleans, supra, note 4.
[1] Just as the applicant should not be granted a variance because he remodeled the property before obtaining the proper permits, he should not be denied a variance (if otherwise proper) as a penalty for doing so.